# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| TU NGUYEN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2060 |
| | § | |
| DUY TU HOANG, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and the Texas Citizens Participation Act ("TCPA") filed by defendants Radio Free Asia ("RFA"), Libby Liu, and Khanh Van Nguyen (Dkt. 18); (2) a motion to dismiss under Rule 12(b)(6) and the TCPA filed by defendant Viet Tan, as an unincorporated association also known as Viet Nam Reform Party ("Viet Tan") (Dkt. 52); (3) a motion to dismiss under Rule 12(b)(6) and for lack of personal jurisdiction filed by defendants Chan Vu Dang, Xuyen Dong Matsuda, and Trinity Hong Thuan (collectively, "Individual Defendants Group One") (Dkt. 25); (4) a motion to dismiss under Rule 12(b)(6) and for lack of personal jurisdiction filed by defendants Duy Tu Hoang, a/k/a Dan Hoang, Angelina Trang Hunyh, Dinh Co Hoang, and Doan Bui, a/k/a Ly Thai Hung (collectively, "Individual Defendants Group Two") (Dkt. 46); (5) a motion to dismiss under Rule 12(b)(6), for lack of personal jurisdiction, and under the TCPA filed by defendant Diem Hoang Do[1] (Dkt. 51); (6) a motion to dismiss under the TCPA filed by the Individual Defendant Group One (Dkt. 26); (7) a motion to dismiss under the TCPA filed by the Individual Defendants Group Two (Dkt. 47); (8) a

---

[1] The court will refer to the Individual Defendants Group One, the Individual Defendants Group Two, and Diem Hoang Do collectively as the "Individual Defendants."

motion to require the plaintiff to post a bond filed by RFA, Libby Liu, and Khanh Van Nguyen (Dkt. 30); and (9) objections to evidence filed by Viet Tan and Diem Hoang Do (Dkt. 76). The court held a hearing on these motions on May 23, 2018. The Individual Defendants all consented to jurisdiction after the hearing. Dkts. 79, 80. After considering the motions, responses, replies, arguments at the hearing, related filings, and the applicable law, the court is of the opinion that the motions to dismiss for lack of personal jurisdiction (partially, Dkts. 25, 46, 51) should be DENIED, the motions to dismiss under the TCPA (Dkts. 26, 47, and, partially, Dkts. 18, 51, 52) should be either GRANTED (Dkts. 18, 26, 47, 51) or GRANTED IN PART DENIED IN PART (Dkt. 52), and the motions to dismiss under Rule 12(b)(6) (partially, Dkts. 18, 25, 46, 51, 52) should be either DENIED AS MOOT (Dkts. 18, 25, 46, 51, 52) or GRANTED IN PART AND DENIED IN PART (Dkt. 52). Additionally, the motion for bond (Dkt. 30) should be DENIED, and the evidentiary objections (Dkt. 76) should be OVERRULED.

## I. BACKGROUND

This case is about issues that are particularly significant to the Vietnamese American community. Plaintiff Tu Nguyen's father, Dam Phong Nguyen, was a prominent journalist in Vietnam who wrote under the name Dam Phong. Dkt. 63 at 4. Dam Phong Nguyen, his wife, and ten children (including Tu) escaped the communist government in Vietnam in 1975. *Id.*; Dkt. 72-2 at 5 ("My family and I previously lived in Vietnam and like many other individuals, had to escape the communist government in Vietnam at great risk to my life."). By 1981, the family had settled in Houston, Texas, and Dam Phong Nguyen had founded a Vietnamese language newspaper. Dkt. 63 at 4–5. In 1982, he published some investigative reports about a group known as "The Front." *Id.* at 5. Tu Nguyen contends that The Front wanted Dam Phong Nguyen to discontinue publishing the investigative reports, falsely accused Dam Phong Nguyen of being a communist and supporting

the Vietnamese government, and threatened Dam Phong Nguyen's life. Dkt. 72-2. On August 24, 1982, when Tu Nguyen was 19 years old, Dam Phong Nguyen was murdered in front of his home. *Id.* No arrests were ever made. *Id.* Tu Nguyen has strong suspicion that agents of The Front were involved in his father's murder. *Id.* He also believes that The Front is linked to the political party Viet Tan. *Id.*

After his father's murder, Tu Nguyen was concerned for his safety and the safety of his family. *Id.* He consequently refrained from participation in Vietnamese community activities for many years. *Id.* However, he began investing a possible link between The Front and Viet Tan in 2014. *Id.*

On or around November 3, 2015, Tu Nguyen was featured in a PBS Frontline documentary, *Terror in Little Saigon*. Dkt. 72-2; Dkt. 73-3. According to the translated transcript of a press conference given by defendant Diem Hoang Do on November 14, 2016, who was the Viet Tan party Chairman at the time, the film can be summarized "as alleging that the National United Front for Liberation of Vietnam [(the Front)] was behind the deaths of a few Vietnamese journalists in the 1980's. To give the impression that The Front was guilty, they painted the Vietnamese refugees community as radical, bent on using violence, and intending to resume a war to reclaim privileges and social positions they lost." Dkt. 73-3 at 3. Diem Hoang Do characterized the film's contents as "offensive to the Vietnamese refugees community's struggle." *Id.*

Tu Nguyen continued his investigation. In the summer of 2016, he learned that Viet Tan was not an officially incorporated entity. Dkt. 72-2. An acquaintance of Tu Nguyen's incorporated an entity in California named VT Corp (Viet Tan – Vietnam Reform Party). *Id.* Tu Nguyen was originally an officer in this corporation, but he has since resigned. *Id.* Registration of the name led to a lawsuit in California. *See* Dkt. 46, Ex. 6 (Complaint, *Vietnam Reform Party v. Viet Tan -*

*Vietnam Reform Party*, No. 5:17-cv-00291-NC (Jan. 20 2017)). In this lawsuit, Viet Tan alleged that Tu Nguyen is a resident of Texas and the owner and incorporator of Viet Tan - Vietnam Reform Party. *Id.* Viet Tan contended that it was formed on September 19, 2004, as an association of members whose aim is "to establish democracy and reform Vietnam through peaceful and political means." *Id.* It asserted that since that time it has continually used its marks throughout California and the United States. *Id.* Viet Tan alleged that the Viet Tan corporation "was organized for the sole, improper purpose of interfering with [Viet Tan's] ongoing business and political activities and attempting to usurp control of [Viet Tan's] Marks." *Id.* Viet Tan additionally alleged that Tu Nguyen contacted various individuals and organizations and advised that the Viet Tan corporation, as opposed to the original Viet Tan party, had exclusive rights to the Marks. *Id.* Tu Nguyen and Viet Tan eventually settled the case. Dkt. 63.

Unfortunately, in the midst of this kerfuffle, Tu Nguyen contends that he started to receive death threats about his involvement with the creation of the Viet Tan corporation. Dkt. 68-1. He consequently started performing Internet searches of the names of various leaders of the RFA and Viet Tan, and he discovered numerous statements on the Internet about or relating to him that he contends are defamatory. *Id.* The statements, for the most part, indicate that Tu Nguyen's work to discredit Viet Tan is at least peripherally aiding the communist party in Vietnam. Dkt. 63.

Tu Nguyen contends that he has vivid memories of his father's murder and that the current death threats have made him fearful of leaving his home. Dkt. 72-2 at 7. He is afraid he "may ultimately face the same fate as [his] father" because of the statements made by the defendants in this lawsuit. *Id.* He believes that the defendants in this lawsuit have falsely labeled him as a communist or communist sympathizer and asserts that "being labeled as a communist or communist sympathizer can shatter a person's reputation in the [Vietnamese American] community." *Id.* at 6. He explains

that in the "Vietnamese community in the United States, it is considered taboo and traitorous to show any support to the communist government in Vietnam." *Id.* at 3. Tu Nguyen states that he has never supported the communist government in Vietnam and is ideologically opposed to that government. *Id.* at 6. In fact, he contends that he agrees with Viet Tan's stance against communism in Vietnam. *Id.*

Tu Nguyen initiated this lawsuit on July 6, 2017. Dkt. 1. He originally sued (1) the Broadcasting Board of Governors Directors Leon Aron, Ryan Crocker, Michael W. Kempner, Jefferey Shell, and Matthew Armstrong, in their official capacities; (2) RFA as a corporation; (3) Libby Liu, John Lansing, Bernadette M. Burns, Susan Lavery, Alan Tanenbaum, Norman Thompson, and Khanh Van Nguyen, who all appear to be affiliated in some way with RFA; (4) Viet Tan/Viet Nam Reform Party as an unincorporated association; (5) Duy Tu Hoang (Dan Hoang), Diem Hoang Do, Dinh Co Hoang, Chan Vu Dang, Xuyen Dong Matsuda, Doan Bui "Ly Thai Hung," and Angelina Trang Huynh, who all appear to be affiliated with Viet Tan; (5) Nguoi Viet Daily News, Inc.; (6) Giao Thein Phu Pham; and (7) John Do #1 through Doe #10. *Id.*

On January 3, 2018, summonses were issued relating to Doan Bui, Chan Vu Dang, Dim Hoang Do, Dan Hoang, Dinh Co Hoang, Angelina Trang Huynh, Libby Liu, Xuyen Dong Matsuda, Khanh Van Nguyen, RFA, Trinity Hong Thuan, and Viet Tan. *See* Dkt. (Jan. 3, 2018). According to the record, each of these individuals except Trinity Hong Thuan was served at some point between February and March 2018. Dkts. 11–15, 19–24. Tu Nguyen did not serve the other originally named defendants. Tu Nguyen subsequently filed an amended complaint in which he only names the following individuals as defendants: Viet Tan/Viet Nam Reform Party, Duy Tu Hoang a/k/a Dan Hoang, Diem Hoang Do, Dinh Co Hoang, Chan Vu Dang, Xuyen Dong Matsuda, Trinity Hong Thuan, Doan Bui a/k/a Ly Thai Hung, Angelina Trang Huynh, and RFA. Dkt. 63.

Tu Nguyen alleges that the following statements are defamatory:

(1)     On March 1, 2016, Chan Vu Dang wrote an article published in *Viet Times* magazine that allegedly accuses Tu of "being a willing puppet for the communists in Vietnam." *Id.* ¶ 32.

(2)     On April 25, 2016, Chan Vu Dang allegedly stated in an article published on Viet Tan's blog that Tu Nguyen "was attacking Viet Tan and its ideals to fight against communism." *Id.*

(3)     On August 27, 2016, Dan Hoang allegedly issued a statement that indicated that Tu Nguyen and his collaborators were "lending a hand in helping to let off the pressure on the Vietnamese Communist regime, and dispersing the common struggle of all Vietnamese." *Id.* ¶ 33.

(4)     In the same statement, Dan Hoang allegedly stated that the "scheme" "creates chaos in the Vietnamese community overseas," and then he called on "all executive committees of community organizations, all media organizations, and all associations to be vigilant to isolate these saboteurs from the ranks of those who seek freedom and democracy for our country." *Id.* ¶ 34. Tu Nguyen contends that it called for community leaders to take action against him personally because he was assisting the communist regime in Vietnam. *Id.*

(5)     On August 28, 2016, Angelina Huynh, who Tu Nguyen contends is the executive director of Viet Tan, allegedly stated on Facebook that Tu Nguyen was "serving the interests of the communist Vietnam" and "'hiding behind the so-called "search for justice" to undermine efforts to fight for democratic freedom'" and that the people doing this "'should be isolated, as this is serving the interests of the communist Vietnam.'" *Id.* ¶ 35.

(6)     On April 27, 2016, Trinity Hong Thuan, an alleged Viet Tan member, allegedly stated that "'there is someone overseas who claims to "seek justice for Dad" but continues to use the communist dirty tactics'" and this person "'should be condemned.'" *Id.* ¶ 36.

(7)     On the same day, Trinity Hong Thuan allegedly also posted on her Facebook page that it was "'no surprise that [the plaintiff] and "The People" newspaper [the official communication of the communist party in Vietnam] form a tag team.'" *Id.* ¶ 37.

(8)     On April 26, 2016, Xuyen Dong Matsuda allegedly posted an article by Hoi Trinh about Tu Nguyen on her two Facebook pages. Xuyen Dong Matsuda shared the article and allegedly stated that "'the communist party would succeed, to a certain extent, when it could condition the thought of those who care to the point that they agree with it.'" *Id.* ¶ 38. Tu Nguyen contends that the comment "incites the idea that Tu [Nguyen] had been conditioned by the communist party of Vietnam to be in like mindset with it to further that party's objectives." *Id.*

(9)     On March 3, 2016, Xuyen Dong Matsuda allegedly created another Facebook page under the alias Xuyen Dan An and reposted the allegedly defamatory remarks of Chan Vu Dang calling Tu Nguyen a puppet for the communists. She also allegedly posted the article to a blog. *Id.* ¶ 39.

(10)   In September 2016, Diem Hoang Do allegedly made a statement in front of the media stating that Tu Nguyen's actions benefitted the Vietnamese communist party "and were offering a spear to the enemy." *Id.* ¶ 40.

(11)   On September 8, 2016, Dinh Co Hoang, who Tu Nguyen contends is the chair of the Viet Tan and former Chief Financial Officer of The Front, allegedly sent an email that accused Tu Nguyen of "being a tool for the communist regime in Vietnam and sabotaging the cause of freedom and democracy for Vietnamese people." He also allegedly stated that Tu Nguyen brought his father "'back to life'" by following in his footsteps, which Tu Nguyen interprets as meaning that his "father deserved to be killed" and Tu Nguyen deserves the same treatment. *Id.* ¶ 41. Tu Nguyen contends that this email was re-broadcasted by Viet Tan members and sympathizers. *Id.*

(12)   On September 2, 2016, Nguyen Tuong Thuy, who is not a party in this case, allegedly published an article on an RFA-affiliated blog. This article stated that Tu Nguyen stole Viet Tan's name and concluded that Tu Nguyen's work benefitted the communist party. *Id.* ¶ 42.

(13)   On November 14, 2015, Viet Tan issued a statement regarding *Terror in Little Saigon*. Diem Hoang Do held a press conference in Orange County, California, and Doan Bui held a press conference in Houston, Texas. *Id.* ¶ 43. Tu Nguyen alleges that during these press conferences they "insinuate[d that] the film and those involved," including Tu Nguyen, "had the financial support of the Vietnamese communist government." *Id.*

(14)   On May 2, 2018, after the trademark case in California settled, Dan Hoang and Viet Tan issued a press release that was posted on Viet Tan's website. *Id.* ¶ 44. Tu Nguyen contends that the press release referred to him as a criminal defendant. *Id.*

(15)   Tu Nguyen contends that Nguyen Tuong Thuy reposted his RFA article insinuating that Tu Nguyen's actions benefitted the Vietnamese communist party on his Facebook page on or around this same time. *Id.*

Tu Nguyen also argues that the Individual Defendants, who he contends are all high-ranking members of Viet Tan in America, worked in concert to defame his name by coordinated press conferences and making an erroneous connection between criticism of Viet Tan and having a relationship with communists. *Id.* at 11. He additionally contends that RFA and the Viet Tan defendants "have embarked on a witch hunt to defame Tu [Nguyen] with false accusations of being aligned with or acting for the communist party in Vietnam." *Id.* at 10.

The defendants have all filed motions to dismiss:

(1)    Libby Liu, Khanh Van Nguyen, and RFA filed their motion to dismiss under Rule 12(b)(6) and the TCPA on March 13, 2018.  Dkt. 18.

(2)    The Individual Defendants Group One filed their motions to dismiss for lack of personal jurisdiction and under Rule 12(b)(6) and the TCPA on March 23, 2018.  Dkts. 25, 26.

(3)    The Individual Defendants Group Two filed their motions to dismiss for lack  of personal jurisdiction and under Rule 12(b)(6) and the TCPA on April 20, 2018.  Dkts. 46, 47.

(4)    Diem Do and Viet Tan both filed motions to dismiss under Rule 12(b)(6) and the TCPA on April 26, 2018, and Diem Do's motion included a motion to dismiss for lack of personal jurisdiction.  Dkts. 51, 52.

The defendants all seek attorneys' fees or, in the alternative, sanctions, under the mandatory attorneys' fees provision of the TCPA.  Dkts. 18, 26, 47, 51, 52.

After Libby Liu, Khanh Van Nguyen, and RFA filed their motion to dismiss, Tu Nguyen voluntarily dismissed Libby Liu and Khanh Van Nguyen from the case.  Dkt. 29 (filed Mar. 28, 2018).  The next day, Libby Liu, Khanh Van Nguyen, and RFA filed a motion to require Nguyen to post a bond.  Dkt. 30 (filed Mar. 29, 2018).

The court set a hearing on all these motions for May 23, 2018.  Dkt. 49.  Before the hearing, Tu Nguyen moved for leave to file the second amended complaint, and the court granted the motion. Dkts. 59, 62.  After Tu Nguyen filed his second amended complaint on May 8, 2018, RFA filed a request to maintain the May 23 hearing, and the court maintained the hearing.  Dkts. 63, 64.  Prior to the hearing, Diem Do and Viet Tan's filed objections to Tu Nguyen's evidence.[2]  Dkt. 76.  The parties all appeared for the hearing on May 23.  All of the defendants who filed motions to dismiss for lack of personal jurisdiction have now consented to jurisdiction.  Dkts. 79, 80.

---

[2]  Tu Nguyen requested time to file responsive briefing to the evidentiary objections rather than arguing on their merits at the hearing.  This briefing has now been filed, and the evidentiary objections are ripe for disposition.  Dkt. 81.

The motions are ripe for disposition.

## II. EVIDENTIARY OBJECTIONS

Diem Hoang Do and Viet Tan present two evidentiary objections. Dkt. 76. First, they object to the translator's "note" in a translation Tu Nguyen provided on a May 1, 2018 press release by Viet Tan. Dkt. 76 (objecting partially to Dkt. 72-16). Second, they object to a translation of an email that does not contain information about the person to whom the email was sent. *Id.* (objecting to Dkt. 72-9).

With regard to the translator's note, the translator stated that "Bi Cao in this context is referring to the defendant as a criminal in criminal procedure, where as Bi Don is a defendant in a civil case." Dkt. 72-16. However, in the translated text, the translator merely uses the English word "defendant" without any modifiers. *Id.* Diem Hoang Do and Viet Tan object to the translator's note under Federal Rule of Evidence 702 and 703, arguing that the note is improper expert testimony. Dkt. 76. Tu Nguyen argues that the note "was inserted to highlight the distinction in Vietnamese between the words for criminal defendant versus civil defendant." Dkt. 81. He asserts that foreign languages cannot "'convey precisely and exactly the same idea and intent comprised in the original text, and it is unrealistic to impose an impossible requirement of exactness before allowing a translation to be considered.'" *Id.* (quoting *United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir. 1988)). Tu Nguyen contends that if the court does not consider the note, "the translation would be lacking the necessary context that would assist the Court in making its decision." *Id.* He points out that Diem Hoang Do and Viet Tan could have provided a competing translation and failed to do so. *Id.*

While certainly it would have been helpful if the translator had just modified the translated word "defendant" with the word "criminal" rather than adding this context with a note, it is difficult

to fault a translator for attempting to explain a variation in how things are interpreted by adding a note, especially to the extent that merely adding the English word "criminal" in front of "defendant" would not accurately convey the distinction. The note does not transform the translator into an expert any more than any particular translation of any other word in the document would do so. Moreover, Diem Hoang Do and Viet Tan were certainly not prohibited from offering a different translation or calling the translator to testify if they actually took issue with the substantive correctness of the note. The objection to the translator's note is therefore OVERRULED.

The court now turns to the email. The top of the email provides information about who the email is from, the date and time sent, and the email subject. Dkt. 72-9. It does not provide information regarding to whom the email was sent. *See id.* Diem Hoang Do and Viet Tan assert that they "are only left to wonder whether this 'sent to' information was redacted from the email provided to the translator." Dkt. 76. They therefore object under Federal Rule of Evidence 1002, the Best Evidence Rule. *Id.* They point out that in its current state, they cannot even ascertain whether the email was "published" to third parties. *Id.* They also object under Federal Rule of Evidence 403 because they contend the probative value of the email is substantially outweighed by the danger of unfair prejudice it poses to the defendants. *Id.*

Tu Nguyen asserts that he does not know why the email does not list a recipient. Dkt. 81. He points out that Dinh Co Hoang (the email sender) stated in a declaration filed with the court that he sent the email to a private individual in France. *Id.* (citing Dkt. 46 at 11). He further notes that the original email will be obtained from Dinh Co Hoang during discovery, making the Best Evidence Rule point moot. *Id.*

First, with regard to Rule 403, which provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Diem Hoang Do and Viet Tan have not actually provided any argument as to why the email poses a danger of unfair prejudice to them.  Fed. R. Evid. 403.  The Rule 403 objection is therefore OVERRULED.

With regard to the Best Evidence Rule objection, Tu Nguyen states in his affidavit that the email "was re-broadcasted by Viet Tan members and sympathizers," which is presumably how Tu Nguyen acquired the email with no "to" field.  Dkt. 72-2 ¶ 37.  Clearly, under the expedited TCPA proceedings, Tu Nguyen would be prejudiced if he were required to obtain the best evidence since he has not had the opportunity to conduct discovery and propound requests for production.  The original email that contains all of the fields would be in the custody and control of Dinh Co Hoang, not Tu Nguyen.

The court finds that absent any allegation that the email is otherwise not authentic and in consideration of the fact that the information regarding the original recipient is in the record (*see* Dkt. 46, Ex. 3 ¶ 8), the exhibit provided is in adequate form to be considered as clear and specific evidence should the substance of the email actually meet the elements of a prima facie case of defamation.  Diem Hoang Do and Viet Tan's objection under the Best Evidence Rule is OVERRULED.

### III. LEGAL STANDARDS FOR MOTIONS TO DISMISS

#### A. Failure to State a Claim

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum*

& *Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible-enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## B.    TCPA

The TCPA is Texas's anti-SLAPP statute. SLAPP stands for "Strategic Lawsuit Against Public Participation." *See In re Lipsky*, 411 S.W.3d 530, 536 n.1, 539 (Tex. App.—Fort Worth 2013). The statute "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The Texas Supreme Court explains "matters of public concern" as "[p]ublic matters [that] include 'a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Brady v. Klentzman*, 515 S.W.3d 878, 884 (2017) (discussing "[w]hat then is a matter of public concern?" (citing *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011)).

The TCPA sets forth a special expedited procedure. A defendant who believes the lawsuit was filed in response to a valid exercise of First Amendment rights may file a motion to dismiss, and the court must conduct a hearing on the motion "not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing . . . [but] in no event shall the hearing occur more than 90 days after service of the motion," with certain exceptions. Tex.

Civ. Prac. & Remedies Code Ann. § 27.004. The court must then rule on the motion no later than thirty days after the hearing. *Id.* § 27.005.

The court "shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* "The 'right of free speech' refers to communications related to 'a matter of public concern' which is defined to include an issue related to: '(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace.'" *In re Lipsky*, 460 S.W.3d at 586 n.4. "The TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same; rather, TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam). "The 'right to petition' refers to a wide range of communications relating to judicial, administrative, or other governmental proceedings." *In re Lipsky*, 460 S.W.3d at 586 n.5. "The 'right of association' refers to people 'collectively express[ing], promot[ing], pursu[ing], or defend[ing] common interests.'" *Id.* at n.6.

If the defendant makes this public-concern showing, the burden shifts to the plaintiff. *Id.* at 587. "The court may not dismiss a legal action under this section if [the plaintiff] establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Remedies Code Ann. § 27.005. A "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460

S.W.3d at 590. Courts should determine if there is clear and specific evidence establishing a prima facie case early in the proceedings and "typically on the basis of the pleadings and affidavits." *Id.* "Clear and specific evidence" does not mean that direct evidence of each essential element is required. *Id.* at 591. In the defamation context, "pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *In re Lipsky*, 460 S.W.3d at 591. Then, if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the claim, the court shall dismiss the claim. Tex. Civ. Prac. & Remedies Code Ann. § 27.005.

## IV. ANALYSIS

The court will first consider the motions to dismiss for lack of personal jurisdiction. It will then address whether the claims should be dismissed under the TCPA or Rule 12(b)(6). Finally, it will consider the requests for a bond and attorneys' fees.

### A. Personal Jurisdiction

The Individual Defendants have all filed motions to dismiss for lack of personal jurisdiction. Dkts. 25, 46, 51. After the hearing, all of these defendants consented to personal jurisdiction. Dkts. 79, 80. Because they have consented to personal jurisdiction, the motions to dismiss for lack of personal jurisdiction filed by these defendants (Dkts. 25, 46, 51) are DENIED AS MOOT.

### B. TCPA

"The purpose of the TCPA is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrative injury.'" *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 746

(5th Cir. 2014) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002)).  The court will thus consider this delicate balance while analyzing the claims under the burden shifting approach required by the TCPA.

### 1.    Defendants' Burden

The defendants must first show by a preponderance of the evidence that Tu Nguyen's claims are based on, related to, or in response to the defendants' right of free speech, right to petition, or right of association.  The court will consider whether each defendant or set of defendants has met this burden.

### a.    RFA

The allegedly defamatory statement by RFA is the article Nguyen Tuong Thuy published on an RFA-affiliated blog.  RFA contends that Tu Nguyen cannot hold it accountable for an article placed on its blog by a third party.  Dkt. 19.  Tu Nguyen argues that Nguyen Tuong Thuy has written many articles for RFA and the contested article contained a tagline indicating that he was affiliated with RFA.[3]  Dkt. 40 at 11.  Tu Nguyen contends that the article denounced him for "stealing" the Viet Tan name and concluded that Tu Nguyen's work benefitted the communist party.  Dkt. 63 ¶ 42.

RFA asserts that Tu Nguyen's concern about how being considered a communist impacts his status as a Vietnamese American in the community renders the speech a matter of public concern to the Vietnamese American community.  Dkt. 18 at 15.  Additionally, it contends that the allegation that Tu Nguyen has received death threats elevates the case to one involving a public concern.  *Id.* at 17.  Tu Nguyen contends that the TCPA does not apply because defamatory language made

---

[3]  In his affidavit, Tu Nguyen contends that when he viewed the article on RFA's website, it listed Thuy's name and had "RFA Vietnam" directly below his name with no disclaimers.  Dkt. 40, Ex. A. at 3.  The translated exhibit provided does not contain such a tagline, *see* Dkt. 40, Ex. G, and the nontranslated versions of articles by Thuy on RFA's blog also do not appear to have a tagline, *see* Dkt. 40, Ex H.

against private individuals is not protected by the First Amendment. Dkt. 40 at 17. RFA construes this argument as a concession that the statements regarding communism implicate a matter of public concern, but points out that whether the statements are defamatory does not affect the applicability of the TCPA, which RFA contends is designed to eliminate frivolous lawsuits. Dkt. 42 at 5.

First, the TCPA will protect RFA if this is a frivolous lawsuit, but its underlying purpose is to protect RFA's constitutional rights while also protecting Tu Nguyen's right to sue if he has a meritorious claim. Thus, the court first focuses on the extent to which RFA was exercising its right of free speech, right to petition, or right of association. The court will set aside, for the moment, RFA's argument that it did not post the article on its blog and instead discuss whether the substance of that article can be viewed as an exercise of a right protected by the TCPA.

RFA points to two cases to support its view that the article's statement linking Tu Nguyen to communism and the alleged resulting death threats relates to an issue of public concern: *Nguyen v. KSJX-Am 1500*, No. H032686, 2009 WL 1027583 (Cal. Ct. App. Apr. 17, 2009), and *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581, 2017 WL 3033314, at *6 (Tex. App.—Dallas July 18, 2017, no pet.). Dkt. 18 at 15, 17. *Nguyen* is an unpublished case out of the California Court of Appeal for the Sixth District. 2009 WL 1027583. The court may not rely on or cite this case under the California Rules of Court. *See* Cal. R. of Ct. R. 8.1115(a) ("Except as provided in (b), an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."). *Fishman* involves claims that the defendant defamed the plaintiff by calling the police and claiming that the plaintiff threatened to shoot the defendant. 2017 WL 3033314, at *3. The defendant claimed that the statements were protected speech that impacted health and safety, the well-being of the community, freedom of petition, and freedom of association. *Id.* The plaintiff

asserted that it related to a private matter and did not impact the public's health and safety. *Id.* The court held that the "allegation to the police and building security that [the plaintiff] threatened to shoot [the defendant] implicated not just a question of 'public importance' but a matter of public concern because it related to [the defendant's] safety and the well-being of [the] employees and others in the building." *Id.* at *6.

Here, RFA asserts that because Tu Nguyen contends the alleged defamation has resulted in death threats, it implicates a matter of public concern. Dkt. 18. According to the First District Court of Appeals in Texas, "[c]ourts have routinely held that matters related to the reporting of crimes and related proceedings are matters of public concern." *Klentzman v. Brady*, 456 S.W.3d 239, 258 (Tex. App.—Houston [1st Dist.] 2014, aff'd). However, while Tu Nguyen contends that the blog post at issue here, along with other allegedly defamatory materials, *resulted* in death threats, the post itself does not relate to the death threats or a crime. Thus, the court is not convinced that the death threats aspect of this case, which relate only to the impact of this and similar statements on Tu Nguyen individually, elevates the original statement to a matter of public concern.

However, the substance of the post itself relates to a public concern because it relates to the government. Perhaps not the Texas Government, or even the U.S. Government, but it relates to a government that is of significance to many in the community in the United States to whom RFA directs its communications—the Vietnamese Government. The post asserts that Tu Nguyen stole Viet Tan's name in California. Dkt. 40-7. It goes on to state that the author has "no basis to believe that Mr. Nguyen Tu works for the Vietnamese Communist Party or is under their control, but it is clear that [Tu Nguyen's action] is in line with the interests of the Communist Party." *Id.* The author then discusses how the Vietnamese press reacted to the issue. *Id.* The author next addresses the statement made by Viet Tan regarding the issue and characterizes this statement as indicating that

Tu Nguyen's actions were "helping the communist regime in Vietnam and diverting the focus on the Vietnamese people's struggle." *Id.* The author's final paragraph notes that the author sympathizes with Tu Nguyen, whose father was killed, and he states that Tu Nguyen's "action is beneficial to the Vietnamese Communist Party." *Id.* He notes that Tu Nguyen has possibly "gone too far" and discusses the possibility of people going to prison in the United States if they use the term "Viet Tan" to refer to the actual Viet Tan Party.[4] *Id.* This aspect of the discussion touches on a concern for community well-being, and the entire article relates to concerns many members of this community have about the Vietnamese government.

RFA has met its burden of showing the blog post relates to a matter of public concern.

### b. Individual Defendants Group One

The Individual Defendants Group One (Chan Vu Dang, Xuyen Dong Matsuda, and Trinity Hong Thuan) filed a joint motion to dismiss under the TCPA, and they combine their arguments for these defendants. Dkt. 26. The court will therefore address the arguments for the three defendants together after briefly discussing the allegedly defamatory statements of each.

The first allegedly defamatory statement made by Chan Vu Dang is an article published in *Viet Times* magazine on March 1, 2016. Dkt. 63 ¶ 32. Tu Nguyen contends that the article accuses him of being a willing puppet for communists in Vietnam. *Id.* The second allegedly defamatory statement made by Chan Vu Dang is an article published in Viet Tan's blog on April 25, 2016, in

---

[4] The article also addresses community well-being, though not for the reason asserted by RFA. The author discusses how a Vietnamese news source interpreted Tu Nguyen's statement regarding the use of the Viet Tan name as indicating that Viet Tan would "'face US jail time'" and noting that there is an "off-chance" that if he went to the United States and called the Viet Tan Party "Viet Tan," "Mr. Tu can sue me and put me in an [sic.] US prison, and I will have no recourse but to accept it." Dkt. 40-7. Clearly, a concern that members of the community may go to jail if they accidentally call an organization by its name impacts the community's well-being.

which Chan Vu Dang, according to Tu Nguyen, stated that Tu Nguyen was attacking Viet Tan and its ideas to fight against communism. *Id.*

The allegedly defamatory statements by Xuyen Dong Matsuda were made on Facebook. *Id.* ¶ 38. In the first statement, Xuyen Dong Matsuda posted an article by Hoi Trinh, who Tu Nguyen contends has a close affiliation with Viet Tan and is a subject of his investigation. *Id.* Tu Nguyen contends that the article is about him and associates him with the Vietnamese communist party. *Id.* When Xuyen Dong Matsuda shared the article on her Facebook page, she stated, "the communist party would succeed, to a certain extent, when it could condition the thought of those who care to the point that they agree with it." *Id.* Tu Nguyen contends that this statement "incites the idea that Tu has been conditioned by the communist party of Vietnam to be in a like mindset with it to further that party's objectives." *Id.* The second post was on a page that Tu Nguyen contends is owned by Xuyen Dong Matsuda but operated under an alias, Xuyen Dan An. *Id.* ¶ 39. In this post, Tu Nguyen contends Xuyen Dong Matsuda reposted Chan Vu Dang's article calling Tu Nguyen a puppet. *Id.*

The allegedly defamatory statement made by Trinity Hong Thuan is also a Facebook post. *Id.* ¶ 36. Tu Nguyen contends that Trinity Hong Thuan is a Viet Tan member who stated on her Facebook page, on April 27, 2016, that if "'there is someone overseas who claims "to seek justice for Dad" but continues to use the communist dirty tactics [then he] should be condemned.'" *Id.* She then also allegedly stated, on the same day, that "'it is no surprise that Nguyen Thanh Tu and "The People" newspaper [the official communication of the communist party of Vietnam] form a tag team.'" *Id.* ¶ 37.

The Individual Defendants Group One argue that the alleged statements relate to their right of free speech and their right of association. Dkt. 26 at 5. With regard to speech, they assert that courts have construed the statutory categories of "public concern" broadly and that the allegations

about their statements are related to the government and to economic and community well-being. *Id.* The Individual Defendants Group One assert that their alleged statements, taken as true, directly relate to the ruling of the government in Vietnam and to Tu Nguyen's association with that government. *Id.* at 8. They also assert that the statements about Tu Nguyen's connection with communism implicate economic and community well-being more acutely than those interests were implicated in other cases where courts found these public concerns. *See id.* (citing Texas cases that have found speech related to community well being or the government).

With regard to free association, the Individual Defendants Group One note that the complaint characterizes them as being members of Viet Tan, which is "unquestionably a group of individuals joined 'to collectively express, promote, pursue, or defend common interests.'" *Id.* at 9 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)).

Tu Nguyen again argues that the publishing of defamatory statements cannot invoke the First Amendment protections required for the TCPA to apply under either the exercise of free speech or right of association, regardless of "any tenuous argument to encompass 'community well being.'" Dkt. 56 at 11. Tu Nguyen, however, misunderstands the defendants' burden, which is not to show that the speech is not defamatory, but merely to show that it relates to the right of free speech, the right to petition, or the right of association. Then, the burden shifts to Tu Nguyen to make out a prima facie case of defamation by clear and specific evidence.

The court finds that the Individual Defendants Group One have shown that their alleged defamatory speech related to a matter of public concern for the same reasons RFA's speech related to a public concern, primarily because it is about how Tu Nguyen's actions allegedly benefit the communist party in Vietnam. There is no need to address the argument regarding the right of association.

### c. Individual Defendants Group Two

The Individual Defendants Group Two (Dan Hoang, Angelina Trang Huynh, Dinh Co Hoang, and Doan Bui) also filed a joint motion and joint arguments. Dkt. 47. The court will thus address them together after briefly outlining the defamation allegations against each.

Tu Nguyen contends that on May 2, 2018, Dan Hoang and Viet Tan issued a press release that was posted on the Viet Tan website and Facebook page. Dkt. 63 ¶ 44. The post was made after Tu Nguyen and Viet Tan settled the case in California. *Id.* According to Tu Nguyen, the press release referred to Tu Nguyen as a criminal defendant and was worded to give the impression that Tu Nguyen had admitted to wrongdoing. *Id.*

Tu Nguyen contends that Angelina Huynh made the following allegedly defamatory statement on her Facebook page on August 28, 2016: "'Those hiding behind the so-called "search for justice" to undermine efforts to fight for democratic freedom are unacceptable and should be isolated, as this is serving the interests of the communist Vietnam.'" *Id.* ¶ 35.

Tu Nguyen contends that on September 8, 2016, Dinh Co Hoang sent an email that accused Tu Nguyen of being a "tool for the communist regime in Vietnam and sabotaging the cause of freedom and democracy for Vietnamese people." *Id.* ¶ 41. He also allegedly said that Tu Nguyen "'brings back to life'" his father, following in his footsteps. *Id.* Tu Nguyen interprets this as meaning that his father "deserved to be killed" and that Tu Nguyen deserves the same treatment. *Id.*

With regard to Doan Bui, a/k/a Ly Thai Hung, Tu Nguyen contends that Doan Bui and Dan Hoang had press conferences in the name of Viet Tan in Orange County, California and Houston, Texas, and that both individuals insinuated that those involved with the film *Terror in Little Saigon*, including Tu Nguyen, had financial support from the Vietnamese communist government. *Id.* ¶ 43

The Individual Defendants Group Two assert that these claims relate to both their exercise of free speech and their right of association. Dkt. 47 at 6. They point out that the TCPA broadly defines the exercise of the right of free speech as speech "'made in connection with a matter of public concern.'" *Id.* (quoting *Lippincott v. Whisenhut*, 462 S.W.3d 507, 508 (Tex. 2015)). They argue that all of the alleged communications relate to how Tu Nguyen undermined the Vietnamese people's efforts for democracy and thus indirectly aided the Vietnamese communists. *Id.* According to these defendants, "***[t]here could hardly be a topic that is more plainly a public concern***." *Id.* at 7. They make the same arguments with regards to the speech impacting community well being that the other individual defendants made. *Id.* Then they point out that all the statements, taken as true, "directly ***'relate to' the ruling government in Vietnam, the democratic movement***, and to [Tu Nguyen's] effect on both." *Id.* at 9. They also make the same arguments with regard to their right of association. *Id.* at 9–10.

Tu Nguyen again argues that the TCPA does not apply because his lawsuit concerns defamatory statements and the First Amendment does not protect defamatory language. Dkt. 68 at 9–10. The court rejects this argument with regard to the Individual Defendants Group Two for the same reasons it rejected the argument with regard to the Individual Defendants Group One and RFA.

The court finds that the Individual Defendants Group Two have shown that their alleged defamatory speech related to a matter of public concern for the same reasons RFA's and the Individual Defendants Group One's speech relates to a public concern, primarily because it is about how Tu Nguyen's actions allegedly benefit the communist party in Vietnam.

### d.     Diem Hoang Do

Tu Nguyen contends that in September 2016, Diem Hoang Do, who allegedly is the chairman of Viet Tan, made a statement to an audience that Tu Nguyen's "actions benefited [sic.] the

Vietnamese communist party and were offering a spear to the enemy." Dkt. 63 ¶ 40. Tu Nguyen interprets this statement as indicating that he was "once again acting as a tool for the Vietnamese communist party." *Id.* He also contends that Diem Hoang Do, along with Doan Bui, held press conferences in Orange County, California and Houston, Texas, during which they "insinuat[ed] the film[, *Terror in Little Saigon*,] and those involved had the financial support of the Vietnamese communist government." *Id.* ¶ 43.

Diem Hoang Do argues that he is protected by the TCPA for Tu Nguyen's complaints against him under his right of association. Dkt. 51 at 18. He points out that Tu Nguyen's pleading characterizes him and other individuals as members of Viet Tan, and he asserts that Tu Nguyen's claims are wholly based on his affiliation with Viet Tan. *Id.* He additionally argues that the alleged statements are protected because they are about a matter of public concern. *Id.* at 18–19.

Tu Nguyen again argues that defamatory language is not protected by the First Amendment, *see* Dkt. 73 at 12, and this argument again fails because this is not the question addressed at the first stage of the inquiry.

The alleged statements made by Diem Hoang Do are matters of public concern for the same reason the alleged statements of the other defendants are matters of public concern. The court need not address whether they are also protected under the right of association.

### e. Viet Tan

Tu Nguyen contends that Viet Tan "has sponsored, facilitated, promoted and circulated numerous defamatory statements against [Tu Nguyen] which were made by [Viet Tan's] agents, officers[,] and Chairman." Dkt. 72 at 3. He notes that several of the statements were made on Viet Tan's website or social media accounts, including press releases regarding the press conferences by Diem Hoang Do and Doan Bui and a YouTube video of Diem Hoang Do—Viet Tan's

chairman—verbally attacking Tu Nguyen during the press conference.  *Id.* at 5.  Additionally, he contends that Dan Hoang was a Viet Tan spokesperson when he issued the statement about Tu Nguyen "lending a hand" to the communist party.  *Id.* at 8.  Similarly, he notes that Dan Hoang published Viet Tan's press release about the settlement in the California case that indicated Tu Nguyen was a criminal defendant.  *Id.* at 11.

Viet Tan argues that Tu Nguyen's lawsuit entirely hinges on statements made by persons associated with Viet Tan, which it contends is an organization promoting human rights and democracy in Vietnam.  Dkt. 52 at 16.  It asserts that the claims made against Viet Tan all relate to the right to associate freely and freedom of speech.  *Id.*  It contends that it is "unquestionably a group of individuals joined 'to collectively express, promote, pursue, or defend common interests.'" *Id.* at 17 (quoting Tex. Civ. Prac. & Rem. Code § 27.001(2)).

Under the TCPA, a party may file a motion to dismiss if the legal action is "*based on, relates to, or is in response to* a party's exercise of the . . . right of association."  Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (emphasis added).  In *Fawcett v. Rogers*, the First Court of Appeals in Houston considered whether a case involving Masons was based on the right of association. *Fawcett*, 492 S.W.3d 18, 23 (Tex. App.—Houston [1st Dist.] 2016, no pet.).  The case stemmed from individuals who were members of the Masons signing a document that accused an individual of violating the organization's rules, which the plaintiff asserted was defamatory.  *Id.* at 24.  The court reasoned that the communications "were made among the Masons" and all of the defendants except one were members of the same lodge.  *Id.*  It noted that the allegations related to whether the plaintiff had violated the rules of the organization and the alleged defamatory document sought review within the organization.  *Id.*  It concluded that the parties had joined together to collectively express, promote or defend common interests, the statements were between individuals seeking to

defend these interests, and the claims were based on these statements. *Id.* Thus, the court held that the defendants carried their burden of showing the TCPA applies. *Id.*

Here, all of the statements made by Viet Tan members seem to relate to their common interest of promoting human rights and democracy in Vietnam, which is similar to the statement made in the *Fawcett* case relating to defending the interests of the Masons. Where this case diverges from *Fawcett*, however, is that the statements were not all made among individuals of the organization and, in fact, some of the statements were made at a press conference. While certainly the statements "relate to" the Viet Tan organization and its goals, that is not necessarily equivalent to relating to the exercise of the right of association. The court, however, need not venture an *Erie* guess on whether Texas courts would find this sufficient under the TCPA, as the statements are all about a matter of public concern and thus relate to the right of free speech. Viet Tan, like the other defendants, has carried its initial burden.

### 2. Plaintiff's Burden

Because the defendants have met their initial burden, Tu Nguyen must now establish a prima facie case for each element of his claims and he must do so by clear and specific evidence.

### a. Defamation

Tu Nguyen asserts defamation claims against all of the defendants. Dkt. 63. "To maintain a defamation cause of action [under Texas law], the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting either with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see Cuba v. Pylant*, 814 F.3d 701, 713 (5th Cir. 2016) (citing *McLemore* for the elements of defamation under Texas law). More recently, Texas courts have

clarified the first element as a "publication of a false statement of fact to a third party." *In re Lipsky*, 460 S.W.3d at 593. A statement is defamatory libel under Texas Civil Practices and Remedies Code section 73.001 if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code Ann. § 73.001. It is defamatory per se under the common law if it is "so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *In re Lipsky*, 460 S.W.3d at 596. Falsehoods that qualify as defamation per se include accusations of committing a crime, having a foul or loathsome disease, or engaging in serious sexual misconduct, and "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade." *Id.* A defamatory statement is considered libel when it is in writing and slander when it is spoken. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013).

"[I]t is a well-settled legal principle that one is liable for republishing the defamatory statement of another." *Id.* at 61. However, the standard also requires some degree of fault, which in the case of a claim by a private individual is negligence. *Id.* Additionally, the defendant may assert various defenses and privileges. *Id.* For example, "[s]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Id.* at 62 (citing *Milkovich v. Larain Journal Co.*, 497 U.S. 1, 21–22, 110 S. Ct. 2695 (1990)). In a similar vein, "even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it is made' discloses that it is merely an opinion masquerading as a fact." *Dall. Morning News, Inc. v. Tatum*, __ S.W.3d __, 2018 WL 2182625, at *3, *16 (Tex. May 11, 2018) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002)). "A statement that fails either test—verifiability or context—is called an opinion." *Id.* at *16.

26

The Texas Supreme Court recently explained "that in a textual-defamation case, a plaintiff may allege that meaning arises in one of three ways": explicitly, "implicitly as a result of the article's entire gist," or "implicitly from a distinct portion of the article rather than from the article's as-a-whole gist."[5] *Id.* at *7. "'Gist' refers to a publication or broadcast's main theme, central idea, thesis, or essence," and publications thus generally have a singular gist. *Id.* at *8. But "implication . . . may emerge from a publication or broadcast's discrete parts" and "includes necessary and logical entailments as well as meanings that are merely suggested." *Id.* It "refers to . . . inferential, illative, suggestive, or deductive meanings." *Id.*

Defamation by implication covers both gist and implication. *Id.* To determine defamation by implication, the court must "determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw." *Id.* at *9. The court must "not place 'overwhelming emphasis on a[ny] single term' or 'focus on individual statements' to the exclusion of the entire publication." *Id.* at *10. It must "consider[] inferential meaning carefully, but not exhaustively." *Id.* No jury is needed if the court determines that a statement either can only be construed as defamatory or that the statement is not reasonably capable of defamatory meaning. *Id.* at *10. If, however, the court finds the statement is capable of at least one defamatory meaning and at least one non-defamatory meaning, a jury must determine whether the defamatory meaning was conveyed. *Id.*

This determination, however, does not end the inquiry. In order to curtail a chilling effect on freedom of speech, the Texas Supreme Court has imposed an additional burden in defamatory

---

[5] The court also drew a distinction between defamation by implication, which it characterized as a subset of textual defamation, and extrinsic defamation, which requires evidence outside of the text to ascertain defamatory meaning. 2018 WL 2182625, at *5–6. The instant case does not involve extrinsic defamation.

implication cases. *Id.* at *13. The plaintiff "must point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" *Id.* (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)).

A showing by the defendant of substantial truth will defeat a plaintiff's defamation claim. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). The "substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). "The test used in deciding whether a broadcast [or publication] is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener [or reader], than a truthful statement would have been." *McIlvain*, 794 S.W.2d at 16. When the Texas Supreme Court outlined the contours of defamation by implication in *Dallas Morning News v. Tatum*, it reiterated its holdings relating to the substantial truth doctrine and specifically noted that it has "never held" and did not hold in *Dallas Morning News* "that a true implication—as opposed to a true gist—can save a defendant from liability for publishing an otherwise factually defamatory statement." *Dall. Morning News*, 2018 WL 2182625, at *8.

### 1) RFA

The defamation claim against RFA relates to non-party Nguyen Tuong Thuy publishing an article on RFA's blog. Dkt. 63. RFA argues that a non-party's publishing of an article on an RFA blog cannot be construed as negligence on RFA's part, noting that there is no allegation that it viewed the article beforehand. Dkt. 18 at 10. Additionally, RFA argues that the alleged speech is a matter of opinion and that the opinion that the plaintiff stole Viet Tan's name and benefitted the communist party cannot be verified. *Id.* at 11. RFA asserts that the Tu Nguyen's "purported impact on Viet Tan's reputation and on the communist party" are quintessential opinions "completely

subjective in nature and cannot be objectively verified." *Id.* Additionally, RFA states that Tu Nguyen has not actually alleged that the statements made by Nguyen Tuong Thuy are false. *Id.* Tu Nguyen has stated that he is not a communist and does not support communism, but Nguyen Tuong Thuy did not accuse Tu Nguyen of being a communist. *Id.* Rather, he said that Tu Nguyen was benefitting the communist party. *Id.* According to RFA, Tu Nguyen "fails to explain how his apparent efforts to reveal the truth about Viet Tan may not incidentally reap an unintended benefit to the communist party." *Id.* at 12.

Tu Nguyen asserts that there have been "significant cases across the United States where parties falsely labeled as communists in certain ethnic or geographic micro-communities . . . have succeeded in defamation actions." Dkt. 40 at 12. He contends that Nguyen Tuong Thuy's statements were made on an RFA-owned website and even if they were later removed, the author continued to publish them on his own website with a tagline that it was published by or endorsed by the RFA. *Id.* (citing Ex. J). Tu Nguyen also argues that Nguyen Tuong Thuy is paid to write content for RFA. *Id.* (citing Tu Nguyen's declaration). Tu Nguyen asserts that, regardless, RFA is responsible for republishing the defamatory statement of another, citing *Neely v. Wilson*. *Id.*

Tu Nguyen additionally asserts he has clear and specific evidence of negligence, noting that the article itself indicates that Nguyen Tuong Thuy had no reason to believe Tu Nguyen was working for the communist party but then accuses Tu Nguyen of aligning his actions with the party. *Id.* at 13. Tu Nguyen also contends that RFA is attempting to isolate precise statements and then claim the statements cannot be verified and thus cannot be defamatory. *Id.* He points out that the Texas Supreme Court has stated that it is important to determine a publication's "gist" as it can "'convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory.'" *Id.* (quoting

*Neely*, 418 S.W.3d at 63-64). Tu Nguyen specifically contends that (1) the "gist" of the article is that he is a communist or communist sympathizer; (2) Nguyen Tuong Thuy states that Tu Nguyen's work is beneficial to the Communist party; (3) Nguyen Tuong Thuy states that he has "'no basis to believe that [Tu] Nguyen . . . is working for the Communist Party or under their influence, but it is clear that what he did is in line with the interest of the Communist Party." *Id.* at 18.

In reply, RFA points out that the post was only on RFA's site for one day. *Id.* (citing Dkt. 40-7 at 4 and Dkt. 40-10 at 2). RFA contends that Tu Nguyen provides no facts showing that RFA actually had any decisionmaking role regarding whether a non-party blog article would be published or even reviewed the article before it was published. *Id.* RFA asserts that Tu Nguyen has not shown that the article's statements that Tu Nguyen is not a communist but that his actions benefitted the communist party are false. *Id.* at 3. Moreover, RFA points out that Tu Nguyen did not respond to its argument that whether his work benefitted the communist party is a matter of opinion and not a verifiable fact. *Id.*

The court finds that it need not address negligence or damages because the allegedly defamatory statement here is not a verifiable fact. While Tu Nguyen contends that the gist of the entire article is that he is a communist or communist sympathizer, a review of the article, which Tu Nguyen provided, reveals that the gist is more along the lines of questioning how Tu Nguyen's actions in California impact or could impact the Viet Tan party and those who refer to the party by this name. The article is, in fact, entitled: "Is Viet Tan at risk of being a 'victim of circumstance'?" Dkt. 40-7. Tu Nguyen seems to take more issue with the discrete statement that his work was in line with the interests of the Vietnamese communist party. This is an example of potential defamation by implication. But Tu Nguyen cannot make out a prima facie case of defamation based on this

statement because there is no way to prove the truth or falsity of this statement. Accordingly, RFA's motion to dismiss the defamation claim under the TCPA is GRANTED.

### 2) The Individual Defendants Group One

The Individual Defendants Group One assert that Tu Nguyen cannot meet his prima facie burden by clear and specific evidence because they did not even publish any statement during the limitations period, the alleged statements were not defamatory or false, and they did not act with malice or even negligence (they contend that Tu Nguyen made himself a public figure so malice is the standard). Dkt. 26 at 10. They also argue that they can establish several of their defenses by a preponderance of evidence because the claims are outside of the statute of limitations and the plaintiff failed to request a retraction as required by the Defamation Mitigation Act. *Id.* at 10–11.

Tu Nguyen contends that he has clear and specific evidence to support each element of his defamation claim. Dkt. 58 at 11. Like with the statement by Nguyen Tuong Thuy on RFA's blog, Tu Nguyen contends that the "gist" of the statements made by the Individual Defendants Group One is an accusation that he is a communist or communist sympathizer. *Id.* at 12–13. He asserts that a reasonable person would perceive the statements of the Individual Defendants Group One as associating Tu Nguyen with communism. *Id.* at 14. He additionally contends that he is a private individual and that the negligence, not malice, standard applies. *Id.* at 17.

The court briefly discussed the content of the allegedly defamatory publications of these defendants in Part IV.B.1.b, *supra*. Tu Nguyen provides the court with a translation of an interview with Chan Vu Dang by a *VietTimes* reporter that was posted on Viet Tan's website on March 1, 2016. Dkt. 58 at 13. In the interview, Chan Vu Dang states that he "would not be surprised if [Tu Nguyen] was viewed as to a great target for those who hate [Viet Tan] to coach and incite him to attack [Viet Tan] under the guise of bringing the murderers [of his father] to justice." Dkt. 55, Ex. C.

He goes on to discuss how Tu Nguyen, in his view, "has no advocacy, political, or writing experience" and that his "letter could only have been written by someone with extensive experience in the political arena and well versed in navigating the U.S. political system." *Id.* Chan Vu Dang indicates that Tu Nguyen was part of some broader plan by other individuals who he discusses more extensively in the article. *See id.* The purpose of the interview, as stated by *Viet Times*, is to counter an interview of Thang Dinh Nguyen that appeared in a Virginia-based news source regarding two letters about Viet Tan, one from Tu Nguyen to Libby Liu and one from Hai Ba Huynh to Representative Loretta Sanchez. *Id.* While the interview starts out discussing Tu Nguyen, the gist of the piece relates to the accusations in the letters discussed regarding Viet Tan's alleged influence on RFA and Viet Tan's response to these allegations. *See id.* As to the discrete statements within the interview that could potentially be considered defamation by implication, specifically the implication that Tu Nguyen was potentially being coached and incited to attack Viet Tan and may not have written the letter, or, as Tu Nguyen states, was a "puppet," are opinions and cannot be verified.

The second Chan Vu Dang statement Tu Nguyen asserts forms the basis of his defamation claim is contained in an article posted on Viet Tan's blog on April 25, 2016. Dkt. 58 at 13 (citing Dkt. 55, Ex. D). In this post, entitled "Vietnamese Communists have started to attack RFA," Chan Vu Dang first provides excerpts from an article that was in the *People's Newspaper*, which he contends is an "official organ of the Vietnamese Communist Party." Dkt. 55, Ex. D. The excerpt discusses documents Tu Nguyen publicized about the relationship between RFA and Viet Tan, which the *People's Newspaper* calls a "terrorist organization." *Id.* Chan Vu Dang opines that "the propaganda machine of the Vietnamese communists is using the allegations made by Mr. Nguyen

32

Thanh Tu as a weapon to attack RFA."[6]  *Id.*  The document discusses how the "Vietnamese media are actively exploiting the American mainstream media" and gives three points that those "elements truly placing as top priority the struggle to eliminate the communist dictatorship need to remind each other."  *Id.*  After these points, it again mentions Tu Nguyen, stating that he "attacked RFA" the "other day" and posing questions about other ways in which "the enemy would succeed" in showing that people who "oppose the communists are all bad people."  *Id.*

The gist of this document is about how the Vietnamese communists are allegedly using propaganda to "attack Viet Tan," including using Tu Nguyen's allegations to "sow dissention [sic.]," and what Viet Tan can do to continue its mission to "truly plac[e] as top priority the struggle to eliminate the communist dictatorship."  *Id.*  Certainly the article discusses Tu Nguyen's work as one part of the strategy, but the overall gist is much broader than that.  The discrete statements about Tu Nguyen are about him attacking RFA, which implies, like the other statement, that Tu Nguyen is being used as a puppet or a weapon in the broader scheme.  But again, these statements are opinion and not verifiable.

With regard to Trinity Hong Thuan, the Facebook statements are that Tu Nguyen "continues to use communist dirty tactics" and "should be condemned" and that Tu Nguyen and *The People* newspaper, which she contends is "the official communication of the communist party in Vietnam," "form a tag team."  Dkt. 58 at 13 (citing Dkt. 55, Ex. F).  These statements are all either opinions or cannot be considered false statements of fact.

With regard to Xuyen Dong Matsuda, Tu Nguyen contends that she defamed him on two Facebook posts in which she reposted an article from *VOICE*.  The *VOICE* article rebuts points made in Tu Nguyen's recent article that the author states "linked [a group called] VOICE and me to the

---

[6]  Some of the translations the court has received refer to Tu Nguyen as Nguyen Thanh Tu.

Viet Tan party." Dkt. 55, Ex. J. The article states that Tu Nguyen's assertions "are not based on the truth," and it discusses Trinh Hoi's background extensively. *Id.* It discusses the political affiliations of the board members of VOICE. *Id.* And then the author says, "I would like Nguyen Thanh Tu to hear the following words of mine before I stop writing because he publicly denounced me by name." *Id.* Trinh Hoi then addresses points Tu Nguyen made regarding why he thought Trinh Hoi was affiliated with Viet Tan. *Id.* Trinh Hoi advises Tu Nguyen that he "may not trample fairness and reason" during his "journey to seek truth and justice" and that "what goes around comes around." *Id.*

The gist of this article is a defense to something Tu Nguyen had written, not an accusation that Tu Nguyen is affiliated with the communist party in Vietnam. The statement Xuyen Dong Matsuda made when reposting it on April, 26, 2016, is that "the Communist Party would succeed, to a certain extent, when it could condition the thought of those who care to the point that they agree with it, that someone as likable and humane as Trinh Hoi or the organization . . . like Viet Tan is 'bad.'" Dkt. 55, Ex. I. This statement, even if one were to infer that it means that Tu Nguyen's thoughts were "condition[ed]" by the communist party because of what he wrote, can still only be considered an opinion. It is not verifiable. Tu Nguyen also takes issue with Xuyen Dong Matsuda allegedly reposting Chan Vu Dang's article on her alias's Facebook page. Dkt. 58 at 14. Again, however, this article cannot be considered defamatory.

Since none of these posts or statements is reasonably capable of defamatory meaning, Tu Nguyen is not able to show by clear and specific evidence that he can meet the elements of his defamation claim against these defendants. Moreover, even if Tu Nguyen has clear and specific evidence of each of the elements of defamation for all of these defendants, these defendants have

shown that each statement was posted on the Internet outside of the limitations period, and Tu Nguyen cannot demonstrate that the discovery rule applies.

Under Texas law, the statute of limitations for a defamation claim in one year. Tex. Civ. Prac. & Remedies Code Ann. § 16.002(a). The statute of limitations generally accrues when the allegedly defamatory material is circulated or published, but the discovery rule may toll accrual. *Deaver v. Desai*, 483 S.W.3d 668, 674-75 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The discovery rule only applies "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). "Generally, any defamation claim arising out of a website would accrue from the day the matter was published or circulated." *Deaver*, 483 S.W.3d at 675; *see Hamad v. Ctr. for Jewish Cmty. Studies*, 265 F. App'x 414, 416 (5th Cir. 2008) (unpublished) (citing *Nationwide Bi-Weekly* for the proposition the statute of limitations runs from the initial date of publication on the Internet and affirming dismissal on statute of limitations grounds); *Nationwide Bi-Weekly Admin., Inc. Belo Corp.*, 512 F.3d 137, 143–46 (5th Cir. 2007) (making an *Erie* guess that the Texas Supreme Court would find that the statute of limitations begins to run on the first day a publication is posted on the Internet); *Snow Sys., Inc. v. Tanner*, No. 1-16-0347, 2017 WL 716047, at *5 (Ill. App. Ct. Feb. 22, 2017) (finding that "an internet posting on a publicly accessible website like the Ripoff Report is, in essence, a type of 'mass-media publication,' and as such, is not subject to the discovery rule"); *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that statements "published on a website owned and maintained by a federal government agency and accessible to the public without charge or subscription . . . are 'public knowledge' and are not inherently undiscoverable").

The alleged defamatory statements by Chan Vu Dang are dated March 1, 2016, and April 25, 2016. Dkt. 58, Exs. C, D. The alleged defamatory Facebook posts by Trinity Hong Thuan are both dated April 27, 2016. Dkt. 58, Exs. E, F. The alleged defamatory statements made by Xuyen Dong Matsuda are dated March, 3, April 25 and April 26, 2016. Dkt. 58, Exs. G, H, I, J. Tu Nguyen filed this lawsuit on July 6, 2017. Dkt. 1. Thus, these statements were all made outside of the limitations period.

Tu Nguyen contends that the statute of limitations was tolled under the discovery rule. Dkt. 58 at 15 (referring to his response to the motion to dismiss for failure to state a claim); Dkt. 56 at 15–16. Under Texas law, whether the discovery rule applies is a question of law. Tu Nguyen asserts that he did not learn about these statements until October 2016 when he started searching the Internet after having received death threats. Dkt. 56 at 17. Tu Nguyen notes that Chan Vu Dang's article was published in a local magazine and was thus inherently undiscoverable. *Id.* He also asserts that the Facebook posts were inherently undiscoverable. *Id.* However, as the defendants point out, Tu Nguyen was able to discover all of these posts when he became diligent about searching for the information in October 2016.[7] Dkt. 65 at 3.

Tu Nguyen cites *San Antonio Credit Union* for the proposition that he did not have an obligation to search the Internet for defamatory information. Dkt. 58. However, *San Antonio Credit Union* relates to the plaintiff discovering that a criminal complaint had been filed. The state court

---

[7] The defendants also argue that Tu Nguyen's discovery rule argument is foreclosed because he discovered the allegedly defamatory material within the limitations period yet waited until after the limitations period to file suit. Dkt. 68 at 3. However, "the fact that [Nguyen] discovered [his] injury within the limitations period does not bar [him] from applying the discovery rule to delay accrual of [his] cause of action." *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 320 (5th Cir. 2011) (unpublished) (per curiam) (relying on *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 195–96 (Tex. App.—Texarkana 2011, no pet.), and noting that if this were the rule, if a plaintiff discovered an injury on the last day of the limitations period, she would be forced to file a lawsuit in one day).

determined that "[a] person should not be required to check his or her criminal record periodically for potentially an indefinite period, in the event that a complaint which might contain defamatory comments is filed against that person." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 98 (Tex. App.—San Antonio 2003, pet. denied). The court noted that the "nature of a criminal complaint makes it difficult if not impossible to discover." *Id.*

Here, Tu Nguyen contends in his affidavit that Chan Vu Dang's statements were in a blog and were also published on the Viet Tan website. Dkt. 55-1 ¶ 32. The exhibit also states that it was posted on the Viet Tan website. Dkt. 55-3. Unlike the criminal complaint in *San Antonio Credit Union*, an article posted on the Viet Tan website on March 1, 2016, even if originally in a regional publication, was not "difficult if not impossible to discover" as of the date it was posted on the Viet Tan website, which was more than one year before Tu Nguyen filed suit. 115 S.W.3d at 98. The defamation claim asserted against Chan Vu Dang for the statements made in this post is barred by the statute of limitations.

With regard to Trinity Hong Thuan, Tu Nguyen asserts that her posts were made on her Facebook pages, but she allegedly tagged a prominent leader of Viet Tan "allowing 1.4 million Viet Tan Facebook followers the ability to read, comment, post and share her post against [Tu Nguyen]." Dkt. 55-1 ¶ 33. He goes on to state that Thuan's "statements were also published on the Viet Tan website." *Id.* These statements therefore were not inherently undiscoverable. The defamation claim asserted against Trinity Hong Thuan for the statements she made on her Facebook page are barred by the statute of limitations.

Next, with regard to the statements made by Xuyen Dong Matsuda, Tu Nguyen asserts the statements were made on her Facebook pages and does not state that they were reposted on Viet Tan's website. The court finds that these statements are more inline with the types of statements in

the cases indicating that Internet postings are similar to a mass media publication than the type of statement in *San Antonio Credit Union*. *Compare Velocity Databank*, 456 S.W.3d at 610 (collecting cases finding that the Internet is a mass medium and determining that statements published on a government website that were accessible to the public were not inherently undiscoverable), *with San Antonio Credit Union*, 115 S.W.3d at 98 (finding that the discovery rule applied to a criminal complaint that by nature was "difficult if not impossible to discover"). In *San Antonio Credit Union*, the court noted that "although an individual should be given a copy of his criminal record on request, . . . a governmental body can refuses to distribute that information to the requesting party" and "in some situations, a criminal complaint may be 'inherently undiscoverable' depending on its importance to a criminal investigation" though "in other instances, an individual may easily obtain his or her criminal record." 115 S.W.3d at 98. The court held that the discovery rule applied because "a person should not be required to check his or her criminal record periodically or potentially for an indefinite period, in the event that a complaint which might contain defamatory comments is filed against that person." *Id.* It is clear from the way the court analyzed this matter that this was not a record that was simply available by searching for one's name on the Internet, at least in 2003 when *San Antonio Credit Union* was decided. Here, it appears Tu Nguyen easily found the information on Facebook when he decided to start searching. The court finds that the discovery rule does not apply to Xuyen Dong Matsuda's Facebook posts and the defamation claim arising from the posts is barred by the statute of limitations.[8]

Because the statements made by the Individual Defendants Group One are either opinions or not false statements of fact and were, regardless, all made outside of the limitations period and

---

[8] The Individual Defendants Group One also assert that they can prove their Defamation Mitigation Act ("DMA") defense by a preponderance of the evidence. The court addresses all DMA defenses together in Part IV.B.3.

not inherently undiscoverable, the Individual Defendants Group One's motion to dismiss the defamation claim under the TCPA is GRANTED.

### 3)     Individual Defendants Group Two

The Individual Defendants Group Two assert that Tu Nguyen cannot identify any statements made by them that contain defamatory facts or were false. Dkt. 47 at 10. They additionally assert that he cannot show by clear and specific evidence that they acted with malice or even negligence. *Id.* Additionally, they contend that they have established that the Tu Nguyen's defamation claims are barred by the Defamation Mitigation Act ("DMA") by a preponderance of the evidence. *Id.* at 11.

Tu Nguyen contends that the gist of the statements made by these defendants (and in fact all of the defendants) is that he is either a communist or a communist sympathizer. Dkt. 68 at 11. With regard to Dan Hoang, Tu Nguyen provides two documents in which he claims Hoang asserted Tu Nguyen was "lending a hand" to the Vietnamese communist regime and asked the community to isolate saboteurs like Tu Nguyen. *Id.* (citing Dkt. 68, Exs. B, C). He also asserts that in discussing the California settlement, Hoang used the word for "criminal defendant" to describe Tu Nguyen. *Id.* (citing Dkt. 68, Ex. C).

The first document is a press release issued by Viet Tan in which it announces that "a group of individuals represented by Nguyen Thanh Tu" incorporated the name Viet Tan in California. Dkt. 68, Ex. B. It explains that Viet Tan "is an entity with the legal status as an unincorporated association" and that Tu Nguyen and his "collaborators" were "lending a hand in helping to let off the pressure on the Vietnamese Communist regime." *Id.* It also "respectfully call[s] on all executive committees of community organizations, all media organizations, and all associations to be vigilant and to isolate these saboteurs from the ranks of those who seek freedom and democracy for our

country." *Id.* The Individual Defendants Group Two assert that this press release is merely opinion and does not convey a verifiable fact. Dkt. 71 at 2–3 (citing *Tatum*). They also contend that the publications do not have the gist asserted by Tu Nguyen, pointing out that publications "'typically have a single gist.'" *Id.* at 3 (quoting *Tatum*).

The court finds that the press release is a response to Tu Nguyen's incorporation of the name Viet Tan in California. The gist is essentially a rebuttal to Tu Nguyen's efforts to prohibit Viet Tan from using the name. The statement that Tu Nguyen was lending a hand to the communists in Vietnam is an opinion and cannot be verified. The statement about isolating saboteurs cannot be defamatory because the "saboteurs" portion is an opinion and the remainder of the statement is not a "false statement of fact." In his affidavit, Tu Nguyen states that he believes the "use of the word 'isolate' was meant to incite Viet Tan members to take action against me, including physical violence." Dkt. 68, Ex. A ¶ 35. The court finds this troubling, but it is not actionable as defamation since it is not a false statement of fact.

The second statement that Tu Nguyen asserts is a defamatory statement by Dan Hoang is a press release that describes the agreement reached in the California case. *See* Dkt. 68, Ex. C. The Individual Defendants Group Two assert that it is not clear this press release was even written by Dan Hoang, as he is listed as a "contact" not an author. Dkt. 71 at 2 & n.2. The court agrees that on its face the document does not reveal that it is written by Dan Hoang. *See* Dkt. 68, Ex. C (listing Viet Tan as the author and listing Duy Tu Hoang as the contact). In his affidavit, Tu Nguyen asserts that Dan Hoang is the spokesperson for Viet Tan and, "[u]pon information and belief," that he drafts "many if not all of the press releases." Dkt. 68, Ex. A ¶ 35. The court need not reach the issue of whether this statement is defamatory because Tu Nguyen's evidence that Dan Hoang wrote this press release does not meet the clear and specific standard required under the TCPA. The first element

of a defamation claim requires that the plaintiff show that the defendant published the statement, and Tu Nguyen does not meet that element with regard to this statement.

With regard to Angelina Trang Huynh, Tu Nguyen contends that she posted Dan Hoang's press release on her Facebook page and commented that Tu Nguyen's actions were serving the interests of communist Vietnam. Dkt. 68 at 12 (citing Dkt. 68, Ex. D). Tu Nguyen provided a translation of this post, which states: "Hiding behind the so-called 'search for justice' in order to undermine the fight for democratic freedom is unacceptable and should be isolated, as it means serving the interests o the Communist Party of Vietnam." Dkt. 68, Ex. D. She goes on to state it is "pure lunacy" to think registering an employee ID number with the IRS equates to owning the name and that "[t]his poor attempt at name stealing will be punished by the law." *Id.* Tu Nguyen contends this is defamation because it indicates that he is serving the interests of communist Vietnam. Dkt. 68. The Individual Defendants Group Two argue that this cannot be considered defamation because it is opinion. The court agrees.

With regard to Dinh Co Hoang, Tu Nguyen contends that he sent an email accusing Tu Nguyen of "being a tool of the communist regime" and also sent a message "that was interpreted as justifying the killing of [Tu Nguyen's] father." Dkt. 68 at 12 (citing Dkt. 68, Ex. E). Tu Nguyen asserts in his affidavit that the email was rebroadcast by Viet Tan members. Dkt. 68, Ex. A ¶ 37. The email states that Tu Nguyen "hides behind the initial guise of searching for the one who killed his father, in order to conduct many acts of sabotage, not only aiming at VietTan but also at most of the adversaries of the Vietnamese communists." Dkt. 68, Ex. E. It discusses Tu Nguyen's father briefly and states that Tu Nguyen "follows the exmple of his father: Play pranks with the fight for liberty and democracy from Vietnam of his compatriots." *Id.* It also states that Tu Nguyen "has given many people the sense of why the unfortunate thing had happened to [Tu Nguyen's father]."

*Id.* The defendants contend that whether conduct is justified is not objectively verifiable and neither is describing a person as a tool. Dkt. 71 at 3. The court agrees that these are opinions and not verifiable.

With regard to Doan Bui, Tu Nguyen argues that Bui's speech to the media about the documentary *Terror it Little Saigon* was defamatory. Dkt. 68 at 12. He asserts that Bui's statements implied that the individuals involved with the documentary, including Tu Nguyen, were supported by the communists. *Id.* (citing Dkt. 68, Ex. F). According to the translation of the transcript of the video, it was published on November 6, 2016. Dkt. 68, Ex. F. However, this transcript, or at least the translation the court received, discusses the killing of Tu Nguyen's father, but it does not mention Tu Nguyen. *See id.* The Individual Defendants Group Two note that Tu Nguyen contends that the speech insinuates that he received financial support from the communist government, which they assert is conclusory. Dkt. 71 at 4. They also assert that Tu Nguyen has provided no evidence negating that he received financial support. *Id.* The court agrees that even if it were possible to infer from the transcript that Tu Nguyen received financial support from the communist government, Tu Nguyen has provided no evidence negating receipt of financial support and thus no clear and specific evidence that the "statement" is not true.[9]

---

[9] Tu Nguyen does make the following statement in his declaration: "These statements are false, were made recklessly (or negligently at a minimum) and were intended to cause damage to my reputation and physical safety, among others. I have suffered emotional damage to my reputation as a result of these statements." Dkt. 72-2 ¶ 42. However, this is a conclusory statement and does not delineate which statements are false. While use of a declaration may be enough in certain instances to meet the clear and specific evidence standard, a general statement that everything is untrue in all of the many statement in this case is simply insufficient. *Compare Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. filed) (considering evidence from a plaintiff's affidavit that he had never given money to the Taliban to be "clear and specific evidence" that the allegedly defamatory statement that he had given money to the Taliban was false), *with id.* at 197 (determining that a conclusory statement about damages in the plaintiff's affidavit did not constitute "clear and specific evidence" as "'[b]are, baseless opinions do not create fact questions'" (citation omitted)), *and Quintanilla v. West*, 534 S.W.3d 34, 47 (Tex. App.—San

In sum, because Tu Nguyen has not provided clear and specific evidence that the allegedly defamatory statements made by the Individual Defendants Group Two are false statements of fact, he has not met his burden under the TCPA with regard to these defendants.[10]  The Individual Defendants Group Two's motion to dismiss the defamation claim under the TCPA is GRANTED.

### 4) Diem Do

Diem Do asserts that Tu Nguyen cannot provide clear and specific evidence to support the elements of his claims, and even if he could, Diem Do can establish several of his defenses by a preponderance of the evidence.  Dkt. 51 at 23.

Tu Nguyen asserts that the gist of Diem Do's statements are that Tu Nguyen is either a communist or communist sympathizer as it relates to the Vietnamese communist party.  Dkt. 73 at 14.  He asserts that his statements in his declaration are sufficient evidence of the first element of defamation, and he points to the allegedly defamatory statements made by Diem Do, attached as exhibits B and C to his response.  *Id.*  Exhibit B is an article from Viet Tan's website entitled, "Viet Tan Party Representative, Mr. Diem Hoang Do, Met with Community Members in Southern California to Discuss the Documentary 'Terror in Little Saigon.'"  Dkt. 73, Ex. B.  It is dated November 15, 2015.  *Id.*  The article discusses the film *Terror in Little Saigon* and how it links the deaths of Vietnamese journalists to the Front.  *Id.*  It provides Diem Hoang Do's statement made during the meeting.  *Id.*  Diem Hoang Do stated that the film was "offensive to the Vietnamese refugees community's struggle" and urged "everyone to work with the community's representatives and groups to defend the honor of the Vietnamese refugees community."  *Id.*  He noted that Viet Tan

---

Antonio 2017, pet. filed) ("Conclusory statements are not probative and will not suffice to establish a prima facie case.").

[10]  The Individual Defendants Group Two do not assert a statute of limitations defense.  They do assert a DMA defense, which the court will address in Part IV.B.3.

sent an official letter of protest to PBS. *Id.* He then presented "the Viet Tan Party's views" in five key points. *Id.* First, he expressed empathy regarding the loss of the families of the murdered journalists. *Id.* Then, he asserted that the Front had nothing to do with it. *Id.* Third, he rebutted the film's characterization of the K9 Team of the Front as being "team of assassins." *Id.* The fourth and fifth points are also about efforts to refute ideas advanced in the film. *Id.* Diem Hoang Do noted that he joined the Front in 1982 and that today he continues the "struggle as a member of the Viet Tan Party." *Id.* The gist of this article is a rebuttal to statements made in the film; it has nothing to do with accusing Tu Nguyen of being a communist or communist sympathizer.

Exhibit C contains transcripts of press conferences by Diem Hoang Do on November 16, 2015, and September 5, 2016. Dkt. 73, Ex. C. The November 16 press conference relates to Tony Nguyen, and the parties confirmed during the hearing that Tony Nguyen is not the same person as Tu Nguyen. *Id.* The September 5 press conference, however, is about Tu Nguyen and his actions in California with regard to the Viet Tan name. *See id.* Diem Hoang Do stated that Tu Nguyen "is not knowledgeable about the law" and "has made a few completely erroneous statements." *Id.* He indicated that Viet Tan would retain legal counsel to "stop Tu Thanh Nguyen's indefensible and illegal activities." *Id.* He stated that Viet Tan may continue to use its name and asserted that this type of action "benefits only the Vietnamese communist party and is of the type that [the party] characterize[s] as 'offering the spear to the enemy.'" *Id.*

The gist of this press release is an examination of how Viet Tan would deal with Tu Nguyen's incorporation of its name. To the extent portions of the release imply that Tu Nguyen's efforts benefit the Vietnamese communist party, this is an opinion and not verifiable.[11]

---

[11] Diem Hoang Do asserts a DMA defense, which the court will address in Part IV.B.3.

5) **Viet Tan**

Viet Tan asserts that Tu Nguyen cannot provide sufficient facts to maintain his claims against Viet Tan for defamation or defamation per se and certainly cannot meet the higher standard of clear and specific evidence required by the TCPA. Dkt. 52 at 21. Mainly, Viet Tan asserts that Tu Nguyen fails to spell out what statement made by Viet Tan constitute defamation. *Id.* at 10. Moreover, it contends that it can establish several of its defenses by a preponderance of the evidence. *Id.* at 21.

Tu Nguyen asserts that he has alleged various defamatory statements made by Viet Tan on its website and social media page. Dkt 72 at 8. He asserts that Viet Tan "actively engaged in endorsing and precipitating statements" including all of the statements made by the other defendants except for RFA. *Id.* at 8–9. He also brings in RFA's statements as "conspired defamation." *Id.* at 9. Moreover, he contends that he can defeat a motion for summary judgment through his own sworn statements that the statements made by Viet Tan or its agents are false. *Id.* at 19 (citing *Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. filed)). The court has, however, already determined that most of the statements are opinions and therefore cannot be considered defamatory. For statements that the court has found insufficient evidence of falsity, Tu Nguyen's affidavits did not provide a sufficient indication that the statements were false. The only statement that the court needs to analyze specifically with regard to Viet Tan is the press release in which Viet Tan used the word for "criminal defendant" to describe Tu Nguyen.[12] *See* Dkt. 68, Ex. C.

The press release, written in Vietnamese, is entitled, "Defendant Tu Thanh Nguyen Agreed

---

[12] The court previously considered this statement to the extent Tu Nguyen contended it was a statement made by Dan Hoang and found that Tu Nguyen did not meet his burden because there is insufficient evidence that the statement was made by Dan Hoang. It is clear, however, that Viet Tan issued the press release. *See* Dkt. 68, Ex. C.

to Cease Unlawful Use of Viet Tan Party's Name."[13] *Id.* It indicates that Tu Nguyen, referred to throughout the press release using the Vietnamese word used to describe a defendant in a criminal proceeding, "agreed to cease his unlawful use of the Viet Tan Party's name," stop claiming that he and his associates could use the name, stop sending letters that claim he had the right to stop others from using the name, and "[s]top his unlawful claims to the use of the Viet Tan Party's names that are familiar to the public." *Id.* The final sentence states: "The agreement proves that the defendant's prior statements on the Viet Tan Party's legal status have no merit." *Id.* Tu Nguyen contends that this was a civil case in which he continues to maintain he did not do anything improper, yet the press release "was worded to give the impression that I had admitted to wrongdoing and was a criminal of some sort." Dkt. 68, Ex. A ¶ 35.

This press release is not a matter of implicit defamation in which the court must attempt to find underlying meanings. The certified professional translator, who provided a sworn declaration, indicates that Tu Nguyen is referred to using the Vietnamese word that relates to a defendant in a criminal proceeding. This is explicitly defamatory. "If a statement unambiguously and falsely imputes criminal conduct to plaintiff, it is defamatory per se." *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied). "It is sufficient to constitute [defamation] per se if, in [reading] the statement, an ordinary person would draw a reasonable conclusion that the complaining party was charged with a violation of some criminal law." *Id.* Here, the court believes an ordinary person *trained in the law* would have cause to pause when reading the press release, as it discusses Tu Nguyen's "agree[ment] to cease his unlawful use of the Viet Tan

---

[13] The translator's note, which is placed directly after the word "defendant" in the title, states: "Bi Cao in this context is referring to the defendant as a criminal in criminal procedure, whereas Bi Don is a defendant in a civil case." *Id.* The term "bi cao" is used several times in the untranslated version provided to the court and seems to correspond with all of the uses of the term "defendant" in the translated version. *See id.*

Party's name," while also referring to him as a defendant in a criminal proceeding. Dkt. 68, Ex. C. However, an ordinary reader seeing the word used for a defendant in a criminal proceeding interspersed with the term "unlawful" would possibly, as Tu Nguyen asserts, conclude that Tu Nguyen had admitted to wrongdoing and been party to some sort of crime. This evidence is clear and specific enough to constitute a prima facie case of defamation or defamation per se. Tu Nguyen has met his burden with regard to this particular press release.

Viet Tan's motion to dismiss under the TCPA is GRANTED IN PART and DENIED IN PART. It is DENIED with regard to the press release dated May 1, 2018. It is otherwise GRANTED.

### 3.    The Texas Defamation Mitigation Act

The Individual Defendants argue that Tu Nguyen failed to timely request a correction, clarification, or retraction as required by the Texas Defamation Mitigation Act ("DMA") and that the case should be dismissed on this basis alone. Dkts. 26, 47, 75 (citing *Tubbs*, 675 F. App'x at 439).

The purpose of the Texas Defamation Mitigation Act ("DMA") is "to provide a method for a person who has been defamed by publication or broadcast to mitigate any perceived damage or injury." Tex. Civ. Prac. & Rem Code Ann. § 73.052. It applies to claims for "damages arising out of harm to personal reputation caused by the false content of a publication." *Id.* § 73.054. Under the Texas DMA, a "person may maintain an action for defamation only if . . . the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or . . . the defendant has made a correction, clarification, or retraction." *Id.* § 73.055(a). The person may not recover exemplary damages if he or she fails to "request a correction, clarification, or retraction" within ninety days after receiving knowledge of the publication." *Id.* § 73.055(c).

The Texas Courts of Appeals in Austin and Dallas, after construing the entire statute, have both interpreted these provisions as meaning that the "consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages." *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 812 (Tex. App.—Austin 2017, pet. filed); *Hardy v. Commc'n Workers of Am. Local 6216*, 536 S.W.3d 38 (Tex. App.—Dallas 2017, pet. denied) ("If a plaintiff's claim were subject to dismissal solely due to her failure to request a correction, clarification, or retraction of the statement, a defendant would have no need to ever challenge whether a request was timely."); *see also Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL 4838981, at *3 (N.D. Tex. Oct. 26, 2017) ("Allowing for dismissal under the DMA would read an additional remedy into the statute."). The Fifth Circuit, in an unpublished case, interpreted section 73.055(a) differently, finding that a plaintiff's claim failed as a matter of law under the Texas DMA because the plaintiff failed to request a modification or retraction. *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017) (unpublished). As the Dallas Court of Appeals noted, however, the Fifth Circuit considered only subsection (a) without consideration of the rest of the statute.[14] *Hardy*, 536 S.W.3d at 44 n.4 (also noting that the Fifth Circuit case is unpublished and of limited precedential value). The court agrees with the reasoning set forth in *Hardy* and *Warner Brothers Entertainment* and finds that the Texas legislature meant for section 73.055 to limit damages if a plaintiff fails to request a correction, clarification, or retraction within ninety days; it does not require dismissal. Accordingly, to the extent the Individual Defendants seek dismissal based on the Texas DMA defenses, that request is DENIED.

---

[14] The court notes that there is no indication that the Fifth Circuit was presented with the statutory construction arguments that have been presented in this case, *Hardy*, and *Warner Brothers Entertainment*.

### b.     Conspiracy

Under Texas law, the elements of civil conspiracy are (1) "two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "[T]here cannot be a civil conspiracy to be negligent." *Id.*

RFA points out that the tort underlying the alleged civil conspiracy in this case is defamation. Dkt. 18 at 12. It argues first that since the defamation claim fails, the conspiracy claim must also fail under the plain language of the TCPA. *Id.* The other defendants make similar arguments. *See* Dkt. 26 (Individual Defendants Group One motion to dismiss) (noting that the complaint expressly specifies that all of Tu Nguyen's claims are based on the allegedly defamatory statements and that they all must therefore be dismissed); Dkt. 47 (Individual Defendant Group Two motion to dismiss) (same); Dkt. 51 (Diem Do's motion to dismiss) (noting that because all of the other claims are related to the relevant communications, they all must be dismissed under the TCPA); Dkt. 52 (Viet Tan's motion to dismiss) (same). Additionally, RFA argues that there is no allegation that there was a meeting of the minds with non-party Thuy prior to Thuy publishing the statement. *Id.* The other parties also assert there was no meeting of the minds. *See* Dkts. 26, 47, 51, 52.

Tu Nguyen asserts that his conspiracy claim involves RFA and all of the defendants who are affiliated with Viet Tan conspiring to defame his reputation by falsely labeling him as a communist. Dkt. 40 at 14. He points out that "conspiracy is usually shown with circumstantial evidence and reasonable inferences from the parties' actions." *Id.* at 22. He asserts that the "meeting of the minds" element can be inferred due to the close relationship that he has established existed between RFA and the Viet Tan defendants. *Id.* He makes similar arguments in response to the other defendants' motions to dismiss the conspiracy claim under the TCPA. *See* Dkt. 56 at 22–23

(response to the Individual Defendants Group One's motion to dismiss for failure to state a claim) (arguing that the "statements by Viet Tan and its members that were made in response to or in conjunction with the timing of RFA publishing the blog post create a common purpose and meeting of the minds to harm Mr. Nguyen and discredit him by falsely labeling him as a communist or communist sympathizer"); Dkt. 55 at 20 (response to the Individual Defendants Group One's motion to dismiss under the TCPA) (arguing that the meeting of the minds is shown through the close relationship between RFA and the Viet Tan defendants); Dkt. 68 (response to Individual Defendants Group Two motion to dismiss under the TCPA) (noting the close relationship between RFA and the Viet Tan defendants and arguing that the "press releases, Facebook posts, and emails that share and further disseminate the defamatory comments about Mr. Nguyen were also linked with the Viet Tan website" which Tu Nguyen contends is "prima facie evidence of the close relationship between the Defendants"); Dkt. 73 at 18 (response to Diem Hoang Do's motion to dismiss) (asserting that "the close relationship between the Defendants is sufficient evidence to defeat the Motion to Dismiss"); Dkt. 72 at 22 (response to Viet Tan's motion to dismiss) (same).

RFA replies that there is still no allegation that there was a meeting of the minds. Dkt. 42 at 3. It notes that regardless of any relationship between RFA and Viet Tan, there is no indication that there was a meeting of the minds regarding publishing the blog post, which was actually published by Thuy. *Id.* The other defendants also argue that there is nothing in the complaint that supports the idea that there was a prior agreement between the parties. Dkt. 66 (Individual Defendants Group One reply) ("Plaintiff cites to no evidence of a common purpose or meeting of the minds—he simply cites to each individual statement yet again."); Dkt. 71 (Individual Defendants Group Two reply) (pointing out that the law requires "*each 'particular defendant* agreed with one or more of the other conspirators *on the claimed illegal object* of the conspiracy and *intended* to

have it brought about'" in a conspiracy to defraud case and arguing that "[i]ndividual statements made by distinct entities are plainly insufficient for a conspiracy" (quoting *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.)); Dkt. 74 (Diem Hoang Do's reply) ("In his response, Plaintiff cites to no evidence of a common purpose or meeting of the minds, so Plaintiff has given no specific evidence of one here and therefore, his conspiracy claim fails"); Dkt. 75 (Viet Tan's reply) (noting that the plaintiff merely cites to each individual statement, which is not evidence of a meeting of the minds, and citing *Goldstein*). They additionally argue that an argument that there was a meeting of minds that relies entirely on timing is insufficient, as the TCPA "'requires more than an inference that there was a meeting of the minds.'" Dkt. 66 at 5 (quoting *Backes v. Misko*, 486 S.W.3d 7, 27 (Tex. App.—Dallas 2015, pet. denied)). And, they assert that Tu Nguyen's assertion that there is a "close relationship" is not supported by any specific evidence. *See, e.g.*, *id.* at 5 n.3.

The court will first address the contention that the conspiracy claims must be dismissed because they are based on the statements that the court has already found do not constitute defamation (with the exception of one statement by Viet Tan). Under the TCPA, "If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex. Civ. Prac. & Remedies Code Ann. § 27.003(a). A "legal action" "means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). The amended complaint states that the "Defendants have conspired to come together and defame Tu's name in the Vietnamese community. Their news releases, articles, and Internet posts were timed to defame Tu and lessen his reputation in the community." Dkt. 63. Thus, as the defendants suggest, since the conspiracy causes of action are "based on" the right of free speech, the defendants may file a motion to dismiss the claims under the

section 27.003 of the TCPA. However, under section 27.005, if Tu Nguyen has clear and specific evidence of each element of the claim, he can survive the motion to dismiss under the TCPA unless the defendants can establish a defense by a preponderance of the evidence. *See id.* § 27.005(c)-(d).

The court now turns to whether Tu Nguyen can establish the elements by clear and specific evidence. The element in dispute here is the "meeting of the minds" element. Tu Nguyen cites *International Bankers Life Insurance Co. v. Holloway* to support his argument that an inference that there was a meeting of the minds is sufficient to meet the meeting of the minds element by clear and specific evidence. *See, e.g.*, Dkt. 40.

In *International Bankers Life Insurance Co.*, the Texas Supreme Court stated that the "general rule is that conspiracy is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators." 368 S.W.2d 567, 581 (Tex. 1963). The Texas Supreme Court has "recognize[d] that proof of a conspiracy may be, and usually must be made by circumstantial evidence." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968). However, "a vital fact may not be proved by unreasonable inferences" or "by piling inference upon inference." *Id.* Additionally, a "'close association with a coconspirator will not support an inference of participation' in a conspiracy." *Zervas v. Faulkner*, 861 F.2d 823, 837 (5th Cir. 1988) (applying Texas law) (quoting *United States v. Basey*, 816 F.2d 980, 1002 (5th Cir. 1987)) (determining that a conclusion that there was a meeting of the minds to defraud the plaintiff "can only rest on an overly attenuated chain of inferences and ultimately on no more than speculation and conjecture"). "'Some suspicion linked to other suspicion produces only more suspicion, which is not the same as some

evidence.'" *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012) (applying Texas law) (quoting *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993)).

The defendants cite *Goldstein* and *Backes* to support their contention that there is not clear and specific evidence of a meeting of the minds. In *Goldstein*, the Texas Court of Appeals in Austin instructed that a "conspiracy requires a meeting of the minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; there must be a preconceived plan and unity of design and purpose." 113 S.W.3d at 779. In *Backes*, the Texas Court of Appeals in Dallas, in a case about allegedly defamatory Facebook posts, determined that the TCPA "requires more than an inference that there was a meeting of the minds" as it requires "clear and specific evidence." 486 S.W.3d at 27 (noting that evidence of "heated discussions" between three women on Facebook and the fact that there were "various postings between [two women] prior to [the allegedly defamatory] Post, many of which are mean-spirited" did not meet the threshold of "clear and specific evidence" of a meeting of the minds).

Here, Tu Nguyen asks the court to infer that there was a meeting of the minds because of the close relationship between RFA and Viet Tan and because RFA and the other defendants made their posts around the same time period. First, the court will address the evidence of a close relationship. Tu Nguyen asserts in his affidavit that Thuy is closely associated with Viet Tan, which brought him to the United States to attend an event hosted by RFA. Dkt. 55, Ex. A ¶ 14. He also states that there are "substantial connections between Libby Liu and Khanh Van Nguyen and the Viet Tan organization" and that these individuals "have allowed RFA to often serve as the mouthpiece for Viet Tan." *Id.* ¶ 17. He states that he "learned" that Libby Liu, an RFA officer, "has a very close connection to many high-ranking Viet Tan members" and that Khanh Van Nguyen, an officer of RFA, "has also been involved with Viet Tan owned or affiliated media outlets." *Id.* ¶¶ 18–19. He

additionally asserts that RFA and Viet Tan have worked together in the past, pointing to a time when a Viet Tan member spoke at an RFA program. *Id.* ¶ 20. Finally, he contends that RFA and Viet Tan "have significant financial connections," including financial contributions by RFA to Viet Tan. *Id.* ¶ 21. The court finds that this testimony is not sufficient to amount to clear and specific evidence that RFA and Viet Tan had a meeting of the minds to conspire to defame Tu Nguyen. The fact that it appears the two entities have some sort of relationship or shared interests, without an indication that the shared interest is to defame Tu Nguyen, is not enough.

With regard to the timing argument, the allegedly defamatory posts on RFA's site and by the Individual Defendants were about specific things that Tu Nguyen did during those time periods—appearing on the documentary, participating in the incorporation of a company that used the same name as Viet Tan, and settling the lawsuit relating to the incorporation of the Viet Tan name. The fact that the defendants had similar interests with regard to these activities does not lead to an inference that they were in cahoots, and it certainly is not clear and specific evidence of a meeting of the minds. Moreover, this inference cannot simply be tied to the circumstantial evidence that there was a relationship between RFA and Viet Tan to make up an inference that they must have met and conspired to defame Tu Nguyen.

In addition to the argument that RFA and Viet Tan conspired, Tu Nguyen appears to argue that Viet Tan and the Individual Defendants, all of whom are members of Viet Tan, conspired to defame him. *See* Dkt. 63. These defendants argue that an organization cannot conspire with itself under the intracorporate conspiracy doctrine. Dkts. 26, 47, 51, 52. Tu Nguyen argues that the intracorporate conspiracy doctrine "does not state that a corporation cannot conspire with itself." *See, e.g.*, Dkt. 72 at 23. He also asserts that the doctrine has not been applied to an unincorporated association, which does not enjoy the same privileges as a corporation. *Id.*

Tu Nguyen cites *Elliott v. Tilton* for his contention that the intracorporate conspiracy doctrine does not apply, and the Individual Defendants cite *Wilhite v. H.E. Butt Co.* and *Thompson v. City of Galveston* for their contention that it does apply. Dkt. 72. In *Elliott*, the Fifth Circuit noted that "the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." 89 F.3d 260, 265 (5th Cir. 1996). In *Wilhite*, the Texas Court of Appeals in Corpus Christi found that the individuals who had allegedly conspired, who were H.E.B. management personnel or H.E.B. employees, could not form a conspiracy because a "company cannot conspire with itself, no matter how many of its agents participate in the complained-of action." 812 S.W.2d 1, 5 (Tex. App.—Corpus Christi 1991, no writ), *overruled on other grounds*. In *Thompson*, the U.S. District Court for the Southern District of Texas noted that "a single legal entity, such as the Galveston Police Department and its officers, is incapable of conspiring with itself for the purposes of § 1983." 979 F. Supp. 504, 511 (S.D. Tex. 1997). These cases all support the general intracorporate conspiracy doctrine premise, but they do not illuminate whether this doctrine covers members of an unincorporated association.

The U.S. District Court for the Northern District of Illinois discussed whether the intracorporate conspiracy doctrine could be applied to other forms of businesses in *Sirajullah v. Illinois Medical Inter-Insurance Exchange*. No. 86 C 8668, 1988 WL 53210, at *4 (N.D. Ill. May 17, 1988). The court pointed out that "[c]orporations have a legal existence in contrast with voluntary unincorporated associations" and are single entities, unlike partnerships. *Id.* at *5. The court noted that the issue, then, was "whether defendants comprise a single entity, having a legal existence separate from its members." *Id.* The court relied on *In re Jackson Lockdown/MCO Cases*, in which the U.S. District Court for the Eastern District of Michigan noted that a labor union, which was a voluntary unincorporated association, "did not have a separate legal existence as do

corporations" and that the "conspiracy doctrine has historically been applied to concerted action by union members." 568 F. Supp. 869, 880 (E.D. Mich. 1983); *see also Feinberg v. Eckelmeyer*, No. 2:09-cv-1536-WY, 2009 WL 4906376, at *12 (E.D. Penn. Dec. 16, 2009) (relying on *Sirajullah* and explaining that "the doctrine should only apply to an entity that, like a corporation, is treated as a single entity under the law"). The *In re Jackson Lockdown/MCO Cases* court held that the intracorporate rule did not bar claims that MCO conspired with its own officers and members. *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. at 880. The *Sirajullah* court, on the other hand, ultimately concluded that the inter-insurance exchange in that case was *not* an association or a partnership and was a single, legal entity and that the intracorporate doctrine applied. 1988 WL 531210, at *6.

These cases make evident that whether the doctrine applies depends on the nature of the association, which in this case is an unincorporated association. The Texas Supreme Court, in *Cox v. Thee Evergreen Church*, explained that "[a]n unincorporated association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." 836 S.W.2d 167, 169 (Tex. 1992) (citing Black's Law Dictionary). The court held in *Cox* that" a member of an unincorporated charitable association is not precluded from bringing a negligence action against the association solely because of the individual's membership in the association." *Id.* at 173. Four years later, in *Juhl v. Airington*, the court rejected the notion that members of an unincorporated association would be liable for torts of other members based solely on membership, reasoning that this "would pose serious threats to the right of free association." 936 S.W.2d 640, 642–43 (Tex. 1996). In *Juhl*, the court pointed out that a national organization is not liable for the actions of members of a local chapter unless the national organization "ratified the unlawful conduct." *Id.* at 642 (citing *NAACP v. Claiborne Hardware Co.*,

56

458 U.S. 886, 931–32, 102 S. Ct. 3409 (1982)).  This is different than a corporation, which traditionally is "held liable for the torts of employees acting within the scope of their employment or with apparent authority."  *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 355–56 (5th Cir. 2013) (citing the Restatement (Second) of Agency § 219).  The court finds that these cases, taken together, indicate that it is not appropriate to apply the intracorporate conspiracy doctrine in this case.  The underlying reasoning behind the doctrine, that the corporation is a single entity, does not apply to an unincorporated association like Viet Tan.

Regardless, much like the allegations regarding Viet Tan and its members conspiring with RFA, Tu Nguyen has not provided the court with clear and specific evidence that there was a meeting of the minds amongst the members of the Viet Tan.  Because there is insufficient evidence to make out a prima facie case of conspiracy either amongst all the defendants or just among the members of Viet Tan, the motions to dismiss the conspiracy claims are GRANTED.

### c.    Intentional Infliction of Emotional Distress

Under Texas law, the tort of intentional infliction of emotional distress "has four elements: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe."  *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017).  The second element requires conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)).  "Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct," and "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).

First, all of the defendants argue that the intentional infliction of emotional distress claims

must fail because the defamation claims fail, and the court finds merit in that argument. Dkts. 18,

26, 47, 51, 52. Under Texas law, "intentional infliction of emotional distress is a 'gap filler' tort

never meant to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc.*

*v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Rather, it was "created for the limited purpose of

allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional

distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-*

*LaRoche, Inc. v. Zeitwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Here, since Tu Nguyen agrees that

all of his intentional infliction of emotional distress claims are based on the allegedly defamatory

statements of the defendants, he has another remedy. A gap-filler tort is not needed. *See, e.g.*,

*Melcher v. Small Business Loan Source, LLC*, No. G-14-288, 2016 WL 1211800, at *2 (S.D. Tex.

Mar. 9, 2016) (Froeschner, Mag.) ("Plaintiffs claim for intentional infliction of emotional distress

must be dismissed because such a claim is only cognizable as a 'gap-filler' tort available only in rare

circumstances where severe emotional distress is caused by a Defendant's actions, but no other legal

theory of redress is available. . . . Where, as here, other tort claims are potentially available there is

simply 'no gap to fil' and the claim must be dismissed. (citations omitted)); *E.E.O.C. v. Commercial*

*Coating Serv., Inc.*, No. H-03-3984, 2005 WL 6439215, at *4 (S.D. Tex. May 31, 2005) (Ellison,

J.) ("As long as another existing statutory or common law remedy is available to [the plaintiff] for

the behavior underlying his intentional infliction of emotional distress claim, the claim will fail.").

Moreover, Tu Nguyen cannot meet the clear and specific evidence standard for every element

of his intentional infliction of emotional distress claims. *Hersh v. Tatum* helps demonstrate the

contours of the "extreme and outrageous" element. In *Hersh*, which is related to the *Dallas Morning*

*News* case, the petitioner, an advocate for mental health and suicide prevention, encouraged a

reporter for the Dallas Morning News to write an article calling for greater transparency in obituaries when the cause of death is suicide. 526 S.W.3d at 464. She allegedly encouraged the reporter to "'make the Tatum tragedy public.'" *Id.* The reporter's article quoted the obituary of Paul Tatum and discussed the circumstances of his death in enough detail that readers were able to identify him. *Id.* The Texas Supreme Court, in determining whether to dismiss an intentional infliction of emotional distress claim filed against the petitioner by Paul Tatum's parents, determined that, notwithstanding the fact that the family was still in mourning when the article was published, the petitioner's "indirect actions do not meet the high standard for extreme and outrageous conduct." *Id.*

Here, if there were an allegation that the defendants had directly asserted that Tu Nguyen is a communist, given Tu Nguyen's testimony about the impact of such a statement in the Vietnamese American community, it may have been sufficient to meet the high standard for extreme and outrageous conduct. But the inferential leap required to get from a statement that conduct was possibly aiding communists to the statement indicating one is a communist sympathizer or actually a communist is too steep for the court to conclude that, by providing the court with the statements, Tu Nguyen has provided clear and specific evidence of extreme and outrageous conduct.[15] Since he cannot meet this element with regard to all of the claims that stem from Tu Nguyen's contention that the gist of various statements is that he is a communist or a communist sympathizer, his intentional infliction of emotional distress claims must be dismissed under the TCPA.

In sum, because all of Tu Nguyen's intentional infliction of emotional distress claims stem from statements that Tu Nguyen additionally contends are defamatory, his intentional infliction of emotional distress claims fail because it is a gap-filler tort and there is no gap to fill. The claims that

---

[15] RFA additionally asserts that its conduct cannot be considered intentional or extreme and outrageous because a third party posted to statement on RFA's blog. The court need not address this issue.

stem from the statements that Tu Nguyen contends suggest he is a communist or communist sympathizer because they indicate his actions were in some way aiding communists in Vietnam fail for the additional reason that Tu Nguyen has not provided clear and specific evidence that this is extreme and outrageous conduct. The motions to dismiss the intentional infliction of emotional distress claims under the TCPA are GRANTED.

## C.      Rule 12(b)(6)

All of the defendants also request dismissal of their claims for failure to state a claim under Rule 12(b)(6). Since the court finds that dismissal is appropriate under the TCPA, with the exception of one claim against Viet Tan, there is no need to address the remainder of the Rule 12(b)(6) motions. They are therefore DENIED AS MOOT.

With regard to the motion to dismiss the defamation claim against Viet Tan based on the May 2018 press release, in its motion to dismiss, Viet Tan asserts that the amended complaint "sets forth no facts to explain what Viet Tan allegedly did or how its unstated conduct resulted in liability." Dkt. 52. Tu Nguyen argues that the press release used the word for "criminal defendant" as opposed to the distinct word for defendant in a civil case and that this was in a formal statement by Viet Tan displayed on its website and social media page. Dkt. 72. Viet Tan replies that "[n]one of the complained-of-statements are objectively verifiable, nor do they contradict anything that Plaintiff has pleaded as true." Dkt. 75 (citing *Tatum*). It also contends that there is no factual matter in the complaint to show that Viet Tan was negligent or intended the defamatory inferences. *Id.*

The court finds that the complaint plausibly states a claim of defamation based on the May 2018 press release. To reiterate, a defamation claim in Texas requires that the defendant "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting either with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff

was a private individual, regarding the truth of the statement." *McLemore*, 978 S.W.2d at 571.  The

amended complaint specifically discusses the press release, alleging that (1) the press release was

published on Viet Tan's website and Facebook page with 1.3 million followers; and (2) it "referred

to Tu as the accused in a criminal investigation—even though this is a civil case and Tu maintained

he had not done anything improper."  Dkt. 63 ¶ 44.  Later in the complaint, Tu Nguyen alleges that

the defendants "acted with malice or were at least negligent when they made these statements" and

"acted with reckless disregard for the truth or falsity of the statements made."  *Id.* ¶ 61.  The

amended complaint clearly meets all of the elements for stating a defamation claim, and the claim

is plausible.  Therefore, with regard to the May 2018 press release only, Viet Tan's motion to dismiss

Tu Nguyen's defamation claim is DENIED.  With regard to the other allegedly defamatory

statements made by Viet Tan, it is, like the other motions to dismiss, DENIED AS MOOT.

**D.    Request for Bond**

  RFA, Libby Liu, and Khanh Van Nguyen (the "RFA Defendants") filed a motion requesting

that the court require Tu Nguyen to post a bond in the amount of $50,000 to confirm his ability to

pay an award of attorneys' fees, costs, and expenses under the TCPA.  Dkt. 30.  In the alternative,

they seek sanctions pursuant to Federal Rule of Civil Procedure 11(c) and the TCPA so that Tu

Nguyen will be deterred from filing additional meritless lawsuits.  *Id.*  The motion seeks a bond

"until the RFA Defendants' Motion to Dismiss is resolved."  *Id.*  At the hearing, counsel for the RFA

Defendants indicated that they would like the court to require Tu Nguyen to post a bond pending any

subsequent appeal to ensure that he can pay any attorneys' fee award while prolonging the finality

of the case.  Counsel also argued in the motion and at the hearing that even though Tu Nguyen

voluntarily dismissed his claims against Libby Liu and Khanh Van Nguyen, this dismissal cannot

be used to evade their right to recover their fees under the TCPA, and the court should still award

fees for these defendants and require a bond on their behalf notwithstanding the voluntary dismissal.

*Id.*

First, the request in the motion to post a bond pending the decision on the motion to dismiss is now moot. However, the request for a bond pending appeal is not. The court, however, is reticent to require a bond pending appeal absent specific authority indicating this is appropriate. And the court does not believe there is any conduct here warranting the imposition of sanctions, as it appears that Tu Nguyen subjectively perceived the statements as defamatory and extreme and outrageous even though he did not meet the clear and specific burden. The court will address whether Libby Liu and Khanh Van Nguyen may maintain their request for attorneys fees in the section discussing attorneys' fees.

The motion for a bond is DENIED.

**E.      Request for Attorneys' Fees**

All of the defendants request attorneys' fee or, in the alternative, sanctions, under the mandatory attorneys' fees provision of the TCPA. Dkts. 18, 26, 47, 51, 52. Under Texas Civil Practice and Remedies Code section 27.009, if the court dismisses a case under the TCPA, it "shall award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Remedies Code Ann. § 27.009(a). Tu Nguyen argues that the amount of fees is in the court's discretion, and he requests nominal fees and sanctions. Dkt. 82. The statute requires "reasonable attorney's fees," and the court does not interpret that as indicating that the court has the discretion to award nominal

fees as opposed to awarding the reasonable amount of fees incurred by the defendants in defending this case.

The voluntarily dismissed defendants Libby Liu and Khanh Van Nguyen originally requested attorneys' fees in their motion to dismiss filed on March 13, 2018. Dkt. 18. Tu Nguyen voluntarily dismissed his claims against these defendants on March 28, 2018. Dkt. 29. The court finds that the request for mandatory attorneys' fees under the TCPA is analogous to a counterclaim and that it does not go away simply because Tu Nguyen decided to drop his claims against these plaintiffs after they had already incurred attorneys' fees for drafting a motion to dismiss.

All of the defendants' requests for reasonable attorneys' fees, including the request made by the dismissed defendants, are GRANTED. The amount will be determined after the parties have submitted sufficient briefing. The court finds that the reasonable fees incurred by the multiple defendants in this case will be a sufficient deterrent and that there is no need to impose sanctions. Accordingly, the requests for sanctions are DENIED.

## V. Conclusion

Viet Tan's and Diem Do's evidentiary objections (Dkt. 76) are OVERRULED.

RFA, Libby Liu, and Khanh Van Nguyen's motion to dismiss under Rule 12(b)(6) and the TCPA (Dkt. 18) is GRANTED IN PART AND DENIED IN PART. It is GRANTED in that all of the Tu Nguyen's claims against RFA are DISMISSED under the TCPA. The motion to dismiss under Rule 12(b)(6) is therefore DENIED AS MOOT.

RFA, Libby Liu, and Khanh Van Nguyen's motion for a bond under the TCPA (Dkt. 30) is DENIED.

Chan Vu Dang, Xuyen Dong Matsuda, and Trinity Hong Thuan's motion to dismiss for lack of personal jurisdiction and for failure to state a claim (Dkt. 25) is DENIED AS MOOT.

Chan Vu Dang, Xuyen, Dong Matsuda, and Trinity Hong Thuan's motion to dismiss under the TCPA (Dkt. 26) is GRANTED. All of the claims asserted against these defendants are DISMISSED WITH PREJUDICE.

Dan Hoang, Angelina Trang Huynh, Dinh Co Hoang, and Doan Bui's motion to dismiss for lack of personal jurisdiction and failure to state a claim (Dkt. 46) is DENIED AS MOOT.

Dan Hoang, Angelina Trang Huynh, Dinh Co Hoang, and Doan Bui's motion to dismiss under the TCPA (Dkt. 47) is GRANTED. All of the claims against these defendants are DISMISSED WITH PREJUDICE.

Diem Hoang Do's motion to dismiss under Rule 12(b)(6), the TCPA, and for lack of personal jurisdiction (Dkt. 51) is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the motion to dismiss under the TCPA. It is DENIED AS MOOT with regard to the motions to dismiss under Rule 12(b)(6) and for lack of personal jurisdiction. All of the claims against Diem Hoang Do are DISMISSED WITH PREJUDICE.

Viet Tan's motion to dismiss under Rule 12(b)(6) and under the TCPA is GRANTED IN PART AND DENIED IN PART. It is DENIED with respect to the defamation claim based on the May 2018 press release under both the TCPA and Rule 12(b)(6). It is otherwise GRANTED. All of the claims against Viet Tan except the defamation claim based on the May 2018 press release are DISMISSED WITH PREJUDICE.

The Defendants' requests for reasonable attorneys' fees are GRANTED. The Defendants shall submit briefing and evidence regarding their reasonable fees, expenses, and costs within thirty (30) days of the date of this order.

Signed at Houston, Texas on June 28, 2018.

_____
Gray H. Miller
United States District Judge