# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TU NGUYEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2060 |
| | § | |
| DUY TU HOANG, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court is a motion for summary judgment filed by defendant Viet Tan/Vietnam Reform Party ("Viet Tan"). Dkt. 132. Having considered the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be DENIED.

## I. BACKGROUND

This is a defamation case in which plaintiff Tu Nguyen contends that Viet Tan issued a press release that referred to him as a criminal defendant even though the case referred to in the press release was actually a civil trademark case. Dkt. 63. Tu Nguyen contends that the press release was "worded to give the impression that Tu had admitted to wrongdoing." *Id.* The court concluded, in ruling on Viet Tan's motion to dismiss under the Texas Citizens Participation Act, that the press release and Tu Nguyen's translator's translation thereof was clear and specific evidence of a prima facie case of defamation or defamation *per se*. Dkt. 84.

Viet Tan now moves for summary judgment, arguing that (1) the press release is not reasonably capable of defamatory meaning because Tu Nguyen's translation is inaccurate and misleading; (2) the gist of the press release, when taken as a whole, is substantially true; (3) the press release fails to rise to defamation *per se*, and Tu Nguyen has no evidence of damages for defamation *per quod*; (4) Tu Nguyen is a limited-purpose public figure and therefore must demonstrate that Viet Tan acted with malice or reckless disregard for the truth; and (5) Tu Nguyen cannot meet this

burden. Dkt. 132. Tu Nguyen responds that (1) the press release is defamation *per se*; (2) the press release is not substantially true; (3) Tu Nguyen is not required to establish damages because the press release is defamation *per se* but even if it were defamation *per quod*, he has sufficiently established damages; (4) Tu Nguyen is not a limited-purpose public figure; and (5) even if he were a public figure, Viet Tan acted with actual malice. Dkt. 133. In reply, Viet Tan asserts that (1) Tu Nguyen is a limited-purpose public figure because he himself cultivated and continues to cultivate the public controversy the press release addressed; (2) Viet Tan presented sufficient facts to negate actual malice, and Tu Nguyen failed to refute that evidence, making summary judgment in Viet Tan's favor appropriate. Dkt. 135.

The motion is now ripe for disposition. The court will first set forth the legal standard and will then address whether Viet Tan is entitled to summary judgment.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

"To maintain a defamation cause of action [under Texas law], the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while

acting either with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see Cuba v. Pylant*, 814 F.3d 701, 713 (5th Cir. 2016) (citing *McLemore* for the elements of defamation under Texas law). More recently, Texas courts have clarified the first element as a "publication of a false statement of fact to a third party." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). A statement is defamatory libel under Texas Civil Practices and Remedies Code section 73.001 if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code Ann. § 73.001.

A plaintiff must also prove damages if a statement is defamatory *per quod*, as opposed to defamatory *per se*. *See In re Lipsky*, 460 S.W.3d at 593 (listing "damages, in some cases" as a fourth element). A statement is defamatory *per se* under the common law if it is "so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *In re Lipsky*, 460 S.W.3d at 596. Falsehoods that qualify as defamation *per se* include accusations of committing a crime, having a foul or loathsome disease, or engaging in serious sexual misconduct, and "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade." *Id.* To determine if a statement is defamatory *per se*, one may consider the surrounding circumstances. *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.). However, if the defamatory meaning must be ascertained using innuendo and extrinsic evidence, "the statement has moved beyond the analysis of [defamation] *per se* and into that of [defamation] *per quod*, because innuendo not only reflects the meaning of the statement but also illuminates the amount of harm the plaintiff may have suffered." *Id.* The very definition of "per se" is "in and of itself." *Id.*

## A.    Reasonably Capable of Defamatory Meaning or Substantially True

The press release is written in Vietnamese, and the parties offer competing translations. Viet Tan argues, relying on its translation, that the press release is substantially true. Viet Tan contends

3

that Tu Nguyen's translator's translation is incorrect in that the term translated to mean "criminal defendant" is "what we might call 'legalese,'" or a "legal term of art." Dkt. 132. It argues that the average layperson would understand the term as meaning "the accused" so simply the "defendant." *Id.* However, the court cannot simply use Viet Tan's translators' version in its analysis. There is a question of material fact as to what the Vietnamese words in the press release mean. Because there is an issue of material fact regarding the translation, there is an issue of fact regarding whether the press release is substantially true.

## B.    Defamation *Per Se* or Defamation *Per Quod*

The parties disagree about whether the court should consider Tu Nguyen's claims about the press release as defamation *per se*, which would not require a showing of damages, or defamation *per quod*, which would require proof of damages. The decision regarding which type of defamation is at issue is complicated in this case because of the competing translations. Tu Nguyen contends that the press release is defamation *per se* because it implies criminal conduct. Dkt. 133. Viet Tan argues that to the extent the court determines the press release is defamatory, it is defamation *per quod* because the court must rely on extrinsic evidence and explanatory circumstances to find defamatory meaning. Dkt. 132.

Whether words are reasonably capable of defamatory meaning is a question of law to be decided by the court. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). The court should construe the "statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Id.* If the court determines it is "ambiguous or of doubtful import," then the jury must "determine the statement's meaning and the effect the statement's publication has on an ordinary reader." *Id.* Whether a statement is slander *per se* can be a question of material fact for the jury. *See Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied) (finding that in context statements could "reasonably be interpreted as accusations of shoplifting" and whether the

statements "amounted to slander per se" was a question for the jury); *Edwards v. Ideal Food Stores*, 499 S.W.2d 343, 345–56 (Tex. App.—Amarillo 1973, no writ) (noting that the court could not say as a matter of law that the words were an accusation of a crime and that whether it was an accusation of a crime was a matter for the jury because the language was capable of two meanings).

Viet Tan relies on *KTRK Television, Inc. V. Robinson* to support its contention that the press release cannot be defamation *per se* because it does not indicate that Tu Nguyen committed a crime on its face.[1] In *KTRK*, the person alleging defamation *per se* relied on third-party comments sent to the television station after the offending series of news reports aired to prove that the statements in the reports were defamatory. 409 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The *KTRK* court reasoned that if it "must resort to innuendo and extrinsic evidence to determine whether a statement is defamatory, then it is defamation *per quod* and requires proof of injury and damages." *Id.*

Here, the jury will not need to rely on the type of third-party statements discussed in *KTRK* to determine if a reasonable person would construe the press release as accusing Tu Nguyen of a crime. Rather, in this unusual scenario, it will have to rely on competing translations of what the actual press release says. If Tu Nguyen's translator's version is correct, the jury's determination is still important because a reasonable jury could determine that the context in which the article referred to Tu Nguyen as a criminal defendant does not really accuse him of a crime and is just a simple misuse of the word, or it could determine that people reading the article would reasonably believe Tu Nguyen was a criminal defendant. The outcome of this decision will determine whether the jury moves to damages or skips that stage. Because there is a question of material fact as to whether the statement is defamatory *per se*, the court need not consider Viet Tan's argument that there is no proof of damages.

---

[1] Tu Nguyen's translator asserts that the word the press release uses to describe Tu Nguyen's status translates to "criminal defendant" in English. Dkt. 132, Ex. D. Viet Tan's translator contends that the more appropriate translation is the "accused." Dkt. 132, Ex. E.

## C.      Is Tu Nguyen a Limited-Purpose Public Figure?

Viet Tan argues that, regardless, the court should grant summary judgment in its favor because Tu Nguyen is a limited-purpose public figure, which requires proof of malice, and Tu Nguyen cannot prove actual malice. Dkt. 132. Viet Tan contends that Tu Nguyen started this controversy by initiating a publicly visible effort to hinder Viet Tan, including sending letters to news organizations. *Id.* Viet Tan points out that in Tu Nguyen's deposition he admitted that his intent in initiating the events leading to the trademark case that the press release is about was to influence public opinion about Viet Tan. *Id.* (citing Dkt. 132, Ex A (Nguyen Dep.) at 30–31) ("That's when I say, 'I need to get this name quick' to prove to the communities, all these years that you've been giving money to an entity that does not exist.'"). Viet Tan provides evidence that Tu Nguyen maintains a blog website, a Facebook page with 5,000 followers, and a YouTube channel with around 3,800 subscribers and over thirty videos. *Id.* (citing Dkt. 132, Ex. A at 17–19, 21–22, 24–25, 95). The blog and Facebook page are named for Tu Nguyen's deceased father, Dam Phong, who was murdered when Tu Nguyen was 19 years old. *See* Dkt. 63; Dkt. 132, Ex. A at 17–19, 21–22. Tu Nguyen contends that before the murder members of an organization called The Front, which Tu Nguyen contends is now Viet Tan, threatened his father's life. Dkt. 63. Tu Nguyen has been investigating what he contends is the "link between The Front and Viet Tan" since 2014. *Id.*

Tu Nguyen argues that he is not a limited-purpose public figure. Dkt. 133. He asserts that the controversy here is a trademark lawsuit in California and is not a matter of public concern. *Id.* He contends that the lawsuit was relatively short lived with no discovery and was not covered by any media outlets. *Id.* He acknowledges Viet Tan's evidence that Tu Nguyen made efforts "to engage the media about the trademark dispute," but states that "there is no indication that any media outlet actually picked up the story." *Id.* He asserts that there is no evidence that people outside of the two parties ever even discussed the lawsuit. *Id.*

In reply, Viet Tan argues that Tu Nguyen's assertion that the controversy is a trademark lawsuit in California is "an artificially narrow scope of the controversy," as courts must look to the events actually giving rise to the litigation. Dkt. 135. It notes that in his deposition Tu Nguyen admitted that he filed the trademark suit to "'prove to the public' that 'these guys were not legit.'" *Id.* (citing Dkt. 132, Ex. A at 37). Viet Tan contends that the controversy is actually the broader question of whether Viet Tan is defrauding the government and its global supporters and that the trademark suit is just the latest in Tu Nguyen's efforts to harm Viet Tan's public image. *Id.*

> To determine whether an individual is a limited-purpose public figure, the Fifth Circuit has adopted a three-part test:
> (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;
> (2) the plaintiff must have more than a trivial or tangential role in the controversy; and
> (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*McLemore*, 978 S.W.2d at 571. Here, the court agrees with Viet Tan that Tu Nguyen is trying to artificially narrow the scope of the controversy by limiting it to the trademark case, as it is clear the trademark case is just one part of a larger controversy and a concerted effort by Tu Nguyen to, in his own words, "prove to the public" that Viet Tan is "not legit." Dkt. 132, Ex. A at 37. A cursory review of the record in this case, which included other defendants and allegedly defamatory statements outside of the press release, clearly demonstrates that there has been some success in garnering interest in the larger controversy in the Vietnamese American community, that people are discussing it, and that Tu Nguyen has more than a tangential role.[2] *See, e.g.*, Dkt. 84. And, Tu Nguyen admits the trademark case was part of his overall efforts relating to Viet Tan. *See* Dkt. 132, Ex. A at 37 (Q: "So once you did this investigation and came to this conclusion that they weren't

---

[2] The amended complaint even contends that a blog associated with Radio Free Asia published an article "denouncing Tu for 'stealing' the name Viet Tan." Dkt. 63 ¶ 42.

registered, did you try to get the word out to the public?" A: "Oh, yes, I did."). Tu Nguyen is thus a limited-purpose public figure.

## D.  Malice

Because the court finds that Tu Nguyen is a limited-purpose public figure, Tu Nguyen must show that Viet Tan acted with actual malice. "Actual malice is a term of art, focusing on the defamation defendant's attitude toward the truth of what it reported." *McLemore*, 978 S.W.2d at 573. It means the statement was published either "'with knowledge that it was false or with reckless disregard to whether it was false or not.'" *Id.* (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710 (1964)). "Reckless disregard" in this context means that the plaintiff "must prove that the publisher 'entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *St. Armant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323 (1968)). "A libel defendant is entitled to summary judgment under Texas law if it can negate malice as a matter of law." *Id.*

Viet Tan offers an affidavit of Diem Do, who wrote the press release, as evidence that the press release was published without malice or reckless disregard of the truth. *See* Dkt. 132-4. Diem Do discusses his intent in drafting the press release, which was to "accurately describe [Viet Tan's] settlement with Plaintiff." *Id.* Diem Do asserts that the Vietnamese term Tu Nguyen's translator contends means "criminal defendant" "translates literally to 'the accused.'" *Id.* Diem Do states that he was looking for a word that meant "defendant," which is what his attorneys called Tu Nguyen with regard to the trademark case. *Id.* He felt that the Vietnamese phrase for "the accused" was the best translation. *Id.* He says that at the time he wrote the press release he "was not aware of any more specific meaning in the Vietnamese legal jargon." *Id.* He notes that he has now learned that the word he used means, in the "current legal system in Vietnam," a "defendant in a criminal proceeding." *Id.* But he asserts that he "had never heard of this distinction." *Id.*

Tu Nguyen points out that during his deposition, Diem Do admitted that the label "criminal" would have a negative impact on a person, and he argues that even if Diem Do thought that the word

he chose meant "accused," "accused" in English "sounds more like it relates to a criminal proceeding," as the term is "less commonly used in the context of a civil lawsuit." Dkt. 133. Tu Nguyen notes that Diem Do admitted in his deposition that the term "bi don" (a term not used in the press release) means "civil defendant," and Tu Nguyen questions Diem Do's assertion that he did not know the proper terms for "civil" and "criminal" since he is a native Vietnamese speaker. *Id.* Tu Nguyen argues that Diem Do's "selective ignorance of the language he has spoken all of his life, his word choice combination, the availability of other clarifying phrases, taken together, show that Mr. Do's purpose was to convey to the readers that Tu Nguyen was accused of criminal activity" and that the "intent behind the choice of words is clear when viewed against the backdrop of the antagonistic relationship between Viet Tan and Mr. Nguyen that stretches back to the 1980s and includes an accusation of the murder of Mr. Nguyen's father." *Id.* Tu Nguyen contends that the circumstances present at least some evidence of actual malice. *Id.*

The court agrees that under the circumstances of this case, Diem Do's declaration alone is insufficient to negate malice or reckless disregard. Accordingly, Viet Tan's motion for summary judgment on the malice issue is DENIED.

### IV. CONCLUSION

Viet Tan's motion for summary judgment is DENIED.

Signed at Houston, Texas on March 22, 2019.

_____
Gray H. Miller
Senior United States District Judge